STATE OF CONNECTICUT *v.* MARTIN FRANK ZIEL
(10780)

PETERS, C. J., HEALEY, SHEA, DANNEHY and CALLAHAN, Js.

Argued June 6—decision released July 30, 1985

*Brenda J. Hochberg,* legal intern, with whom were *Jon C. Blue,* assistant public defender, and, on the brief, *Joette Katz,* public defender, for the appellant (defendant).

*Julia D. Dewey,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *David Martland,* legal intern, for the appellee (state).

DANNEHY, J. The defendant was indicted for murder in violation of General Statutes § 53a-54a. Following a trial by jury, he was found guilty as charged and sentenced to a term of imprisonment of twenty-five years to life. The defendant presents one issue for our resolution: Did the trial court err in denying the defendant's motions to excuse a jury panel when it was discovered that several of the prospective jurors, while waiting for voir dire in a jury room and within the hearing of other members of the panel, had stated their opinions that the defendant was guilty? We find no error and affirm the conviction.

The facts of this case may be quickly summarized. In May, 1980, the defendant was searching for a house to purchase for himself and his family. The victim, Jack Abrams, was selling a house located at 595 Williams Road in Wallingford. Although the defendant was

unemployed, he made arrangements to buy Abrams' house, indicating that the purchase price would be obtained from a rich uncle. In anticipation of the sale, Abrams allowed the defendant and his family to move into the unoccupied upper floor of the Williams Road house on May 12, 1980.

The following evening the defendant and Abrams left the Williams Road house together, purportedly going to the home of the defendant's uncle to obtain the purchase money for the house. The defendant took a handgun with him.

The next day Abrams failed to attend a conference at which his presence was required. His body was eventually discovered on July 2, 1980. Abrams had died from gunshot wounds to the head.

At the trial, the state introduced evidence linking the defendant to Abrams' death. A forensic expert testified that the bullets removed from the victim's head had been fired from the defendant's gun. Stains matching the victim's blood type were found in the defendant's car. Also found in the defendant's car were hair samples matching Abrams' hair and slivers of glass identified by Abrams' optician as fragments of glasses he had prescribed for Abrams. Soil samples taken from a shovel found in the defendant's car matched soil from the site where the body was found. The defendant himself admitted that he had been at the scene of the crime but he denied any involvement in the murder.

The following is the sequence of events which led to this appeal. During the voir dire examination of one prospective juror, it was disclosed that a panel of potential jurors had possibly been affected by a conversation which occurred during the voir dire proceedings. The juror testified that he had heard about the defendant's case from media reports and he admitted that he had discussed those reports with other prospective

jurors while waiting in a jury room to be called for his examination. He did not recall that anyone expressed an opinion as to the guilt or innocence of the defendant. The defendant then moved that the entire jury panel be dismissed. The trial court, *Zoarski, J.,* denied the motion, ruling that "we will have to take each individual juror on the merits of their [sic] responses on the voir dire." The juror was dismissed for cause because his responses, upon further inquiry, indicated that he would be unable to set aside his opinion that the defendant was "probably guilty."

The defendant renewed his motion to excuse the entire panel of jurors when the next juror revealed that "several jurors" had expressed their opinions that the defendant was guilty. The trial court again denied the motion stating that it would have the remaining jurors brought in the next morning to "try to establish if any of them based on any discussions that have taken place and . . . as a result of any overheard discussions, have drawn any conclusions which would in any way affect their ability to sit on this jury. I can do that and I will determine whether anybody based on what they may have overheard should be excused."

The next day, the trial court summoned the entire panel of jurors into the courtroom and instructed them collectively not to discuss the case at all in the jury room. It also admonished them to avoid forming any opinions until after the case had been submitted to them.

Individual interrogation of the panel members then continued. Eight jurors were dismissed for cause by the trial court, some for reasons unrelated to the discussions in the jury room. The defendant exercised three of his peremptory challenges in excusing jurors from this panel;[1] the state exercised two peremptory

---

[1] It was conceded at oral argument that the defendant ultimately exhausted all of his peremptory challenges and thus he is entitled to pur-

challenges. Consequently, only two members of the possibly tainted panel were chosen as jurors for the defendant's trial.

"[T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors."[2] *Irvin* v. *Dowd,* 366 U.S. 717, 722, 81 S. Ct. 1639, 6 L. Ed. 2d 751 (1961). Qualified jurors need not be totally ignorant of the facts and issues involved. *Murphy* v. *Florida,* 421 U.S. 794, 799–800, 95 S. Ct. 2031, 44 L. Ed. 2d 589 (1975). "To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." (Citations omitted.) *Irvin* v. *Dowd,* supra, 723. The relevant question is whether the two jurors at issue "had such fixed opinions that they could not judge impartially the guilt of the defendant." *Patton* v. *Yount,* 467 U.S. 1025, 1035, 104 S. Ct. 2885, 81 L. Ed. 2d 847 (1984).

The defendant contends that the unauthorized discussions regarding his guilt which took place among the prospective jurors so tainted the members of the

sue his claim that his challenges for cause were erroneously denied. See *State* v. *Vitale,* 190 Conn. 219, 224–25, 460 A.2d 961 (1983); *State* v. *Smith,* 49 Conn. 376, 379 (1881).

[2] "The sixth amendment to the United States constitution provides, inter alia: 'In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . . ' This guarantee has been made applicable to the states by incorporation into the fourteenth amendment. See *Duncan* v. *Louisiana,* 391 U.S. 145, 88 S. Ct. 1444, 20 L. Ed. 2d 491, [reh. denied, 392 U.S. 947, 88 S. Ct. 2270, 20 L. Ed. 2d 1412] (1968).

"The constitution of Connecticut, article first, § 8, provides in pertinent part: 'In all criminal prosecutions, the accused shall have a right . . . to a speedy, public trial by an impartial jury.' " *State* v. *Washington,* 182 Conn. 419, 425 n.5, 438 A.2d 1144 (1980).

panel that bias should be implied despite the absence of any showing of actual bias. We disagree.

This court has repeatedly stated that it "does not choose to create a set of unreasonably constricting presumptions that jurors be excused for cause . . . where . . . there is no showing of actual bias or prejudice." (Citations omitted.) *State* v. *Clark,* 164 Conn. 224, 228, 319 A.2d 398 (1973). Rather, this court adheres to the principle that "[t]o succeed on a claim of bias the defendant must raise his contention of bias from the realm of speculation to the realm of fact." *State* v. *Almeda,* 189 Conn. 303, 313, 455 A.2d 1326 (1983); *State* v. *Bowen,* 167 Conn. 526, 532, 356 A.2d 162 (1975). The trial court, when empaneling a jury, has a serious duty to determine the question of actual bias and a broad discretion in its rulings. *State* v. *Clark,* supra, 228. " '[A] ruling of the trial judge in the course of a voir dire examination is held to be reversible error only when the judge has clearly abused his discretion or harmful prejudice appears to have resulted.' " *State* v. *Marra,* 195 Conn. 421, 432, 489 A.2d 350 (1985), quoting *State* v. *Anthony,* 172 Conn. 172, 175, 374 A.2d 156 (1976).

Only two jurors are at issue. During voir dire examination, the first juror testified that he had heard some conversations concerning the reports of the defendant's case in the jury room but that he had not participated in those discussions nor had he personally formed any opinion as to the guilt or innocence of the defendant. Although he had heard two or three people state that, in their opinion, the defendant was "probably guilty," he maintained that he would have to hear the evidence before forming an opinion. At the end of the examination, the defendant indicated that he wished to challenge the juror for cause "on the basis of the discussions and the opinions that he has heard of the probability

of guilt of the defendant." The trial court denied the motion and the defendant accepted the juror.

The second juror stated during her voir dire examination that she had overheard some conversations pertaining to the guilt of the defendant but that she did not think anyone had seriously formed an opinion but, rather, that "[t]hey were just fooling around." She stated several times that she had formed no opinion as to the defendant's guilt. The defendant challenged the juror for cause, restating his previous position. The trial court denied the motion and the juror was accepted.

The thorough voir dire examinations of these two jurors clearly indicated a lack of partiality. "Where a juror has a settled opinion in the case, and has declared it, he ought not to sit. But where it is a mere impression, arising from facts supposed to exist, of the truth of which he has formed no opinion . . . there can be no ground to infer hostility or prejudice, and so the juror must be considered indifferent." *State* v. *Potter,* 18 Conn. 166, 174–75 (1846).

Although it would have been proper, and perhaps more efficient, to excuse the entire panel, "it was not unreasonable for the trial court to assume that the voir dire examination would disclose any prejudice upon the part of a prospective juror." *State* v. *Vitale,* 190 Conn. 219, 229, 460 A.2d 961 (1983); see also *State* v. *Marra,* supra, 431. It is true that some of the prospective jurors stated on their examination on the voir dire that they had discussed the case and had come to the opinion that the defendant was "probably guilty." These jurors were dismissed for cause by the trial court. The two jurors at issue repeatedly stated under oath that they had formed no opinion as to the guilt or innocence of the defendant and that they would decide the case only on the evidence presented and according to the instructions given by the trial court.

"[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation . . . . Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Smith* v. *Phillips*, 455 U.S. 209, 217, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982).

The record nowhere reflects that the exposure to the discussions held in the jury room affected either of the two jurors in such a way as to prevent their judging the defendant fairly and impartially. Each was individually interrogated and carefully admonished. This being so, we cannot conclude that the trial court's denial of the defendant's motions to dismiss the entire jury panel, "in light of the assurances of impartiality" unequivocally given by each of these two jurors during their voir dire examinations, deprived the defendant of a fair trial. *State* v. *Marra,* supra, 434.

There is no error.

In this opinion the other judges concurred.