CARL E. JOHNSON, ADMINISTRATOR (ESTATE OF DONNA M. JOHNSON), ET AL. *v.* NEW BRITAIN GENERAL HOSPITAL ET AL.
(12961)

HEALEY, SHEA, SANTANIELLO, KULAWIZ and F. HENNESSY, Js.

Argued February 6—decision released May 26, 1987

*George E. Tillinghast, Jr.,* for the appellant (plaintiff).

*Karen P. Blado,* for the appellees (defendant George H. Bray et al.).

*John R. FitzGerald,* with whom, on the brief, were *Roland F. Young III* and *Jack G. Steigelfest,* for the appellees (named defendant et al.).

ARTHUR H. HEALEY, J. The sole issue on this appeal is whether the trial court erred in denying the plaintiff's challenge for cause of a juror who allegedly had expressed actual bias, prejudice and partiality in his voir dire testimony.

In January, 1986, the plaintiff, Carl E. Johnson, individually and in his capacity as administrator of his wife's estate, brought this action for medical malpractice against the following defendants: New Britain General Hospital; Dr. David Mucci, a resident intern; Dr. George H. Bray; and the New Britain Surgical Group, Inc., Bray's professional corporation. The plaintiff's amended complaint alleged negligence on the part of the defendants in the postoperative care given to the plaintiff's deceased spouse, Donna Johnson. The first three counts alleged an action for wrongful death, and counts four, five and six sought recovery for medical expenses incurred by the plaintiff.

At trial, numerous expert witnesses testified for both parties and presented their views as to both the cause of the decedent's death and the quality of the postoperative care which had been given to her. After hearing the testimony and the judge's instructions on the applicable law, the jury returned a verdict in favor of the defendants.

In this appeal, the plaintiff claims that the trial court erred in overruling and denying his challenge for cause of a juror who, according to the plaintiff, had expressed

actual bias, prejudice and partiality in his voir dire testimony.[1]

The record reveals the following underlying facts: On January 17, 1986, after five jurors had already been selected and after the plaintiff had exhausted all of his peremptory challenges juror number 3707 was questioned by counsel.[2] The juror was first questioned by the defendants' attorneys. After establishing that the juror was a retired dentist who had practiced for thirty years, the defendants' counsel asked the juror what his general feelings were with respect to malpractice litigation.[3] The juror answered: "I think I would have to say that after thirty years of practice, I probably as most of my cohorts, would have an antagonism against malpractice suits and awards." The juror stated that his "antagonism" is based on the fact that unjustified claims have been made. The juror went on to acknowledge, however, that some claims are justified and that he could make a fair and impartial judgment of the

---

[1] After the jury returned with a defendants' verdict, the plaintiff filed a motion to set aside the verdict and a motion for an evidentiary hearing because of juror bias, partiality and prejudice. Both motions were denied by the trial court. In this appeal, the plaintiff's only claim of error is the trial court's ruling on the challenge for cause. The plaintiff has not raised any issue concerning the trial court's rulings on his postverdict motions.

[2] At the start of the voir dire examination of this juror, the trial judge was in chambers and not present on the bench. Early in the examination, however, the trial judge returned to the bench at the request of counsel. Outside the presence of the juror, the parties referred the judge to the preceding questions and answers. The immediately preceding questions and answers were read back to the trial judge and the voir dire examination continued in his presence. Addressing counsel, the trial judge said: "I am going to let you all ask as many questions as you want." Cf. *Lamb* v. *Burns,* 202 Conn. 158, 520 A.2d 190 (1987); *State* v. *Rogers,* 197 Conn. 314, 497 A.2d 387 (1985); *State* v. *Hill,* 196 Conn. 667, 495 A.2d 699 (1985). The trial judge remained on the bench throughout the remainder of the voir dire.

[3] One defense attorney asked the following question: "As you come here, do you have any preformed opinion or prejudice one way or another with respect to malpractice litigation?"

issues presented by the evidence in this particular case.[4]
The juror said that he never had been involved in any
litigation involving malpractice.

---

[4] The colloquy disclosed the following:

"[Attorney FitzGerald]: Now, I take it your antagonism is based on unjustified claims having been made; is that right?

"[Juror]: Yes.

"[Attorney FitzGerald]: Now, do you recognize however that there are instances where a claim is justified?

"[Juror]: Of course.

"[Attorney FitzGerald]: Now, the case that is about to be tried is a case of that type, that is where a patient is suing a hospital and a doctor.

"I would like to ask you this: Do you think that in sitting on a case of this nature, you could make a fair and impartial judgment of the issues presented by the evidence in the particular case without regard to any feeling which you might have generally about the kind of litigation involved?

"[Juror]: I would like to hope so.

"[Attorney FitzGerald]: And I do not mean to press you, sir, but I need a little more definite answer for our record.

"Can you give us assurance that if you are selected to sit, you could and would be fair and impartial?

"[Juror]: I believe I would be.

\* \* \*

"[Attorney FitzGerald]: So you are telling me that you could sit in the case and fairly and impartially judge the case on the basis of the evidence that is heard in court and the law that the judge says applies to it?

"[Juror]: Yes.

\* \* \*

"[Attorney Tillinghast]: [A]s we were discussing, with respect to your general opinion on the malpractice suits, suits against hospitals and doctors, is it your opinion that that general distaste or antagonism for that type of case will not in any way enter into the deliberation of this case in your assessment of the evidence?

"[Juror]: I believe this is so.

"[Attorney Tillinghast]: And, you can assure us then that you are able to take the general opinion that you have of these cases, and completely divorce it from the facts in this particular case? Is that what you are telling us?

"[Juror]: I believe so.

"[Attorney Tillinghast]: Now, I may have asked this question before, I am not sure. I think I did. And, if it is a repetitious question, you can tell me so.

"When we present the evidence and the hospital record and all of the experts in this case, and after you have heard the evidence and heard his Honor's charge, if you found for the plaintiff in this case and found one

The juror was next questioned by the plaintiff's counsel. In response to the attorney's questions, the juror again indicated that he was antagonistic toward malpractice suits and awards. He told the plaintiff's counsel, however, that his attitude was general and not specific.[5] He also said that he believed that in certain situations hospitals or doctors render care that is less than the accepted standard and that "despite [his] general view," he recognized that "some of these suits can be meritorious."[6] When asked if he would be able to

or more of the doctors at fault or the hospital at fault or the doctor and hospital or doctor and professional corporation, because of your background and as a dentist, would you have any hesitation in coming in and standing before the court here rendering a verdict on behalf of the plaintiff as against any one or more of those defendants?

"[Juror]: I believe I would not hesitate.

"[Attorney Tillinghast]: You would then be able to do that; is that correct?

"[Juror]: Yes.

"[Attorney Tillinghast]: Now, taking it a step further. If you did find that there was legal liability or that one or more of the doctors or the hospital was at fault, with respect to the death of Mrs. Johnson, would you be able to deliberate in the jury room and make an assessment of damages or an award of money for the plaintiff? Because as you know, the plaintiff is seeking compensatory damages. Would you be able to do that?

"[Juror]: Yes."

[5] The colloquy included the following:

"[Attorney Tillinghast]: Now, could you explain for us a little as to what you mean by that statement?

"[Juror]: Sure. Well, as best I can. I am not against specific malpractice cases, but I think generally I am against them. I said awards too because I think awards are becoming a social burden to us because of the amounts.

"[Attorney Tillinghast]: Is there anything else that you have—

"[Juror]: No. I have no specific relationship with any malpractice suit at any time.

"[Attorney Tillinghast]: I understand. But, this is an opinion that you formed that you generally are against such claims, is that what you are saying, and the awards?

"[Juror]: Generally yes. Not specifically."

[6] At that time, the following occurred:

"[Attorney Tillinghast]: And, do you believe that in certain situations, that hospitals or doctors could render care that is less than the standard, the accepted standard?

"[Juror]: Certainly.

"[Attorney Tillinghast]: Are you aware of that?

be fair and impartial in making an assessment of damages, he stated: "I think I would be fair. You might not think so." Upon further examination, he stated: "My general opinion is that many cases are frivolous. . . . Many awards are exorbitant." When asked by the plaintiff's counsel whether his general feeling about malpractice cases would affect him in this particular case, the juror stated: "I think in specific cases, I could accept any testimony and come out with a conclusion about it." When asked whether, if he found one of the doctors at fault, he could render a verdict on behalf of the plaintiff, he stated: "I believe I would not hestitate." When asked if he "would in any way favor the defendants with respect to the award or damages that might be awarded, if [the jury] found for the plaintiff," he stated: "I do not think so."

The court also questioned the juror. In response to the court's question as to whether he would approve of himself sitting on the jury if he were the plaintiff, he initially indicated to the court, "[p]robably not." In response to further questioning, however, the juror indicated that he misunderstood the court's question and stated that he would consider himself to be a "fair and impartial juror."[7]

---

"[Juror]: Sure.

"[Attorney Tillinghast]: And, despite the general view of these types of suits, you recognize that some of these suits can be meritorious?

"[Juror]: Of course.

"[Attorney Tillinghast]: However, if you found in this particular case that the plaintiff had proven his case, would you be influenced when you came to the assessment of damages of the money award?

"[Juror]: I do not think so."

[7] The colloquy discloses the following:

"The Court: If you were the plaintiff in this case, do you think you would find yourself sitting on this jury, to be an okay thing with you?

"[Juror]: If I were the plaintiff, would I approve of me?

"The Court: Yes.

"[Juror]: Probably not.

"The Court: Probably not? Why?

After the court permitted each party the opportunity for further questioning, the plaintiff's counsel

"[Juror]: Because as I told them originally, I have an antagonism towards this sort of case.

"The Court: Well, I do not care whether they approve of you. Would you consider yourself to be, from the viewpoint of the plaintiff, knowing you as well as you know yourself, would you consider yourself to be a fair and impartial juror in the eyes of the plaintiff?

"[Juror]: Yes.

"The Court: Is there any other reason you want to give me why you think you should or should not serve on this jury on this particular case? Of course you are a professional man, you are a dentist, as I understand it. Is there anything about your being a dentist that you would find yourself, quite aside from your generalized view which I understand you feel that from what you have read, that some malpractice actions are frivolous and some are exorbitant, bring in exorbitant awards, is there anything about your affinity as being a person who spent so many years in the medical profession, that would negate some affinity between you and these medical defendants, that you think would tip you in any way?

"[Juror]: I think not. I like to think I have a degree of objectivity and I could ignore whatever. And, I have no relationship with these—

"The Court: I understand.

"[Juror]: I am a health service, but I was not a physician.

"The Court: When you rendered the thought that you thought that some malpractice suits are frivolous and some were exorbitant, is your view broad enough also to consider that in your view, that you do believe that probably there are some malpractice suits which are unfair from the point of view that they do not give, for one reason or another, they have not resulted in fair compensation to a plaintiff?

"[Juror]: Yes, of course.

"The Court: There are some of those too.

"[Juror]: Yeah, sure.

"The Court: Do you believe in the general theory, that if somebody has been damaged, if it is proven to your satisfaction, I mean to the standard to which I instruct you on, that if somebody is damaged, that they should recover?

"[Juror]: Yes.

"The Court: They are entitled to recover from the requisite medical people or the hospital whose negligence has been established to your satisfaction?

"[Juror]: Yes.

"The Court: You have no question about that?

"[Juror]: I have no question about that.

\* \* \*

"[Attorney Tillinghast]: In response to his Honor's question, you indicated as far as being a plaintiff, if you were the plaintiff in this case and

requested that the juror be excused for cause. The court denied the request. In denying the request, the court emphasized that the plaintiff's position lacked legal support.[8] In addition, the court found that the juror was unbiased and that he was capable of rendering a fair and impartial verdict.[9] After explaining its reasons for denying the plaintiff's challenge, the court cautioned the juror not to be influenced by evidence originating from outside the courtroom and to decide the case "solely upon the basis of the law which I am going to

sitting on the jury, that the antagonism you have for this type of case, would probably be a disqualifying factor? Is that—

"[Attorney FitzGerald]: I am going to object, you Honor. That is not what the doctor said.

"[Attorney O'Brien]: Objection.

"[Juror]: Well, what I first said, maybe it is. I misunderstood where I was supposed to be thinking from when he first asked. I thought he meant if I was sitting down there as plaintiff and I heard me responding to your questions as the plaintiff, I would not want me there. I think what he meant was—

"The Court: I will tell you what I meant so there will not be any question I will give you a chance.

"I meant from your honest point of view, from your best judgment, if you were the plaintiff interested in getting a just and fair verdict in there, and knowing you as you know yourself, would you have any hesitancy in having you sit on this jury?

"[Juror]: I would not.

"The Court: You would not?

"[Juror]: Which was my second answer."

[8] The court stated: "I have gone through all the cases that I thought had any bearing on this and I have read the case of *The State v. Kokoszka,* [123 Conn. 161, 193 A. 210 (1937)], which gives me very, very little insight into the particular question raised here. There is not the slightest indication in this case, nor can I find any indication in any case, that a person should be excused by the court because of an opinion expressed about the general propriety or view of a particular civil action or a criminal action.

\* \* \*

"I do not find a single case supporting the thesis that because a person has expressed—as a matter of fact, this very case that you cited me has language to the contrary."

[9] The court stated: "I have searched my mind and I have searched my heart, and from everything I have heard, there is nothing that leads me

instruct you on at the conclusion of this case."[10] Additionally, the court, in its opening remarks to the jury, explained that the jury was not to discuss the case and that it was not to "try to find out anything about the case from any other source except from what you hear in court."[11]

---

to believe this man would be anything but a fair and impartial juror in this case. And, I honestly believe that. And, I am going to deny any requests for challenge for cause.

\* \* \*

"There is no reason in my mind to believe that he could not render a fair and impartial verdict, which is why I have got to turn down the challenge.

\* \* \*

"It is a difficult decision and I am listening to you very carefully. I am not making it frivolously, but I have searched my mind, I have read the cases, I have read the law, and I come to the decision I cannot bar him for cause."

In its memorandum of decision on the plaintiff's motion to set aside the verdict and motion for an evidentiary hearing, the court stated that the juror "was unbiased at the time of the voir dire."

This juror was selected as the sixth juror and subsequently was designated as foreperson.

[10] The court instructed the juror as follows:

"The Court: I would like to advise you that you have been selected as a juror in this matter. I would tell you at this time, that you are not to try to find out anything about this case or to talk about this case to anybody. You are to make your decision in this case solely upon the evidence that you have heard in this courtroom, solely upon the basis of the law which I am going to instruct you on at the conclusion of this case. And, you are to put aside—not to try to find out about this case from any other source and better not talk—there are so many witnesses in this case. I am telling you if you start talking to anybody about this case, you are liable to find out there are a lot of witnesses in this case. I am not sure when we are going to be starting this case."

[11] The court instructed the jury as follows: "You are not to discuss this case among yourselves until you have heard all the evidence and closing arguments and my instructions to you. . . . And, while it is unlikely that it might be reported in the media, any of the media, if it is, you are not to read about it. You are not to watch it. You are not to try to find out anything about the case from any other source except from what you hear in court."

## I

Initially, we must determine whether the claim of the plaintiff was adequately raised in the trial court. Practice Book § 4185 provides in part that "[t]he supreme court shall not be bound to consider a claim unless it was distinctly raised at the trial . . . . " The defendants, New Britain General Hospital and David Mucci, argue that the claim raised on appeal was not "distinctly" raised below and, therefore, does not warrant appellate review. We disagree.

At the time the plaintiff moved to excuse this juror for cause, he specifically mentioned that one of the bases for removal was that the juror was biased. The plaintiff's counsel stated, inter alia, "I think that his answers have indicated that this is a bias, which would prejudice the plaintiff in the case. . . . I am arguing, that this juror would be a biased juror . . . [t]his juror said he is antagonistic towards malpractice cases and awards. It is more than that. This is prejudice, this is a bias, this is a partiality. This is more prejudice, partiality or bias, than I have seen in any of the prospective jurors. This is the real thing. This is why I am asking the court to entertain the discretion it has to keep the jury pure and without bias." On the basis of the foregoing, we conclude that the plaintiff adequately has preserved this claim for review by this court.

## II

The plaintiff claims that the voir dire testimony of the juror indicates actual bias on his part and that because actual bias had been established, the plaintiff's challenge for cause should have been granted. Specifically, the plaintiff relies in his brief on the following characterization of the juror's voir dire testimony as establishing actual bias or prejudice: "[H]is opinion after thirty years of practice as a D.D.S. is that he has

an antagonism against malpractice suits and awards . . . that [the] antagonism is based upon unjustified claims having been made . . . he is generally against malpractice cases and awards too because he thinks they are becoming a social burden because of [the dollar] amounts . . . he has formed the opinion that he is generally against such claims and actually has a distaste for them . . . his general opinion that many cases are frivolous and many awards exorbitant . . . his antagonism is based upon his view that malpractice cases are frivolous, brought frivolously and awards—exorbitant awards . . . that he did not know whether his views would spill over into this case if he were chosen to sit as a juror . . . and his scale of justice is tipped in favor of the defendants at the outset.'' The plaintiff argues that ''[i]t makes no difference that [the juror] during his voir dire testimony with much equivocation indicated that he could be fair and impartial.'' The plaintiff maintains that ''[s]uch equivocation coupled with his admissions of actual bias or prejudice . . . called for the trial court . . . to sustain the plaintiff's challenge for cause.'' We disagree.

In Connecticut, the disqualification of a juror may be based upon the General Statutes or upon the rules of the common law. General Statutes §§ 51-217 (a), 51-240; *McCarten* v. *Connecticut Co.*, 103 Conn. 537, 542, 131 A. 505 (1925).[12] In this appeal, the plaintiff

[12] General Statutes § 51-217 (a) provides: ''QUALIFICATION OF JURORS. (a) (1) All jurors shall be electors, or citizens of the United States who are residents of this state and listed in the records of the motor vehicle department as persons to whom motor vehicle operators' licenses have been issued, who have no permanent disability impairing their capacity to serve as jurors and who have reached the age of eighteen. For the purpose of this subsection, 'permanent disability' shall not include deafness or hearing impairment.

''(2) This subsection shall apply to jurors selected and summoned to serve on or before August 31, 1986.''

General Statutes § 51-240 provides: ''EXAMINATION OF JURORS IN CIVIL ACTIONS. (a) In any civil action tried before a jury, either party shall have the right to examine, personally or by his counsel, each juror outside the

does not claim that the juror is disqualified by the General Statutes but does claim that the juror should be disqualified under the common law.[13]

At common law, a challenge to an individual juror for bias or prejudice can be either a principal challenge or a challenge to the favor. *McCarten* v. *Connecticut Co.,* supra. A principal challenge may arise when the connection between the prospective juror and either party is of so close a nature that, when the facts concerning the relationship or interest are proven or when the prospective juror "has formed or expressed an opinion on the question at issue," the disqualification is conclusively presumed. Id.; see, e.g., *State* v. *Kokoszka,* 123 Conn. 161, 164, 193 A. 210 (1937). A challenge to the favor, on the other hand, is one where the connection, being more remote, tends to show bias but does not create a conclusive presumption of bias. *McCarten*

presence of other prospective jurors as to his qualifications to sit as a juror in the action, or as to his interest, if any, in the subject matter of the action, or as to his relations with the parties thereto.

"(b) If the judge before whom the examination is held is of the opinion from the examination that any juror would be unable to render a fair and impartial verdict, the juror shall be excused by the judge from any further service upon the panel, or in the action, as the judge determines.

"(c) The right of examination shall not be abridged by requiring questions to be put to any juror in writing and submitted in advance of the commencement of the action."

In the trial court, the plaintiff's counsel raised General Statutes § 51-240 in arguing that the juror be excused for cause. He argued that there was "a close relationship" where "you have a doctor and the parties are doctors" and here, arguing the juror's "bias," he stressed "the relationship of the party section of that particular statute." The court properly rejected the relationship argument finding that there was none.

[13] The plaintiff's brief specifically states the following: "The [plaintiff has] included Conn. Gen. Stat. § 51-240 (1985) . . . for reference by this Court but implementation of this statute is not necessary in order for a trial judge to sustain a challenge for cause based upon actual bias of a prospective juror. Instead the [plaintiff relies] upon case law, and the common law, indicating that when actual bias is proven on the record by admissions in voir dire then the venireman should be disqualified when challenged for cause either by principal challenge or challenge for favor."

v. *Connecticut Co.,* supra, 542–43. "In such cases, if the court [has] reason to think that bias or prejudice in fact [exists] to such an extent that the juror could not give the parties a fair trial, the juror [should] be held disqualified . . . ." Id., 543. The decision as to the competency of a juror to serve lies in the broad discretion of the trial judge. *State* v. *Cubano,* 203 Conn. 81, 88–89, 523 A.2d 495 (1987); *State* v. *Ziel,* 197 Conn. 60, 65, 495 A.2d 1050 (1985); *McCarten* v. *Connecticut Co.,* supra.

In challenging the competency of this juror to sit on the panel, the plaintiff had the burden of raising his claim of actual bias from " 'the realm of speculation to the realm of fact.' " *State* v. *Cubano,* supra, 90–91; *State* v. *Ziel,* supra, 65. In proving actual juror bias, the party challenging for cause must also show that the juror's state of mind is fixed and settled and not a mere impression. *State* v. *Ziel,* supra, 66; *State* v. *Potter,* 18 Conn. 166, 174–75 (1846). A mere impression of the case when no fixed opinion has been drawn is an insufficient ground to excuse a juror for cause. *State* v. *Potter,* supra. It is not required that the jurors chosen to deliberate be totally ignorant of the facts and issues involved in the case. As the United States Supreme Court has said, "[t]o hold that the mere existence of [a] preconceived notion . . . is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin* v. *Dowd,* 366 U.S. 717, 723, 81 S. Ct. 1639, 6 L. Ed. 2d 751 (1961); accord *Murphy* v. *Florida,* 421 U.S. 794, 799–800, 95 S. Ct. 2031, 44 L. Ed. 2d 589 (1975); cf. *People* v. *Oddy,* 16 App. Div. 2d 585, 229 N.Y.S.2d 983 (1962).[14] "A general, abstract bias or prej-

[14] On the issue of predisposition, the plaintiff lays great emphasis on *People* v. *Oddy,* 16 App. Div. 2d 585, 229 N.Y.S.2d 983 (1962). *Oddy* is inapposite and of little value in this case. In *Oddy,* the defendants were on trial for

udice which a juror may entertain to a class of litigation will not of itself disqualify [a juror] from trying a cause, when it appears that he can set that feeling aside and can and will fairly and impartially decide the particular case solely upon the evidence and the instructions of the court; however, where such bias or prejudice is a fixed and abiding one . . . he is disqualified as a juror with respect to an action falling in such class." 31 Am. Jur., Jury § 183; *Casey* v. *Roman Catholic Archbishop,* 217 Md. 595, 605, 143 A.2d 627 (1958).

*Mackey* v. *Greenview Hospital, Inc.,* 587 S.W.2d 249 (Ky. 1979), is instructive on the issue before us. In *Mackey,* a malpractice action against a hospital and physicians, the Court of Appeals of Kentucky found no error in the trial court's failure to sustain certain challenges for cause during the voir dire. In sustaining the trial court, the court stated: "The juror . . . indicated his general antipathy toward medical malpractice actions. He felt that many doctors had been abused in such suits. However, [the juror] was very careful to state that his views on malpractice litigation would have nothing to do with the case being tried. He affirmed that doctors should pay for their mistakes. There is nothing to suggest that [the juror] had any preconceived notion regarding the merits of this case. Likewise, the record does not suggest that [the juror's] admitted aver-

---

felony murder for killing a prison guard. In that case, the court held that the trial court erred in refusing to excuse for cause a juror who expressed concern that his employment experience might interfere with his judgment in the case despite his statement that he "would try to go by the evidence, to be as honest as [he] could be." Id., 586. The juror, on the voir dire, said that he had been a deputy sheriff for nine years and a prison guard at Attica state prison for thirty years. The juror stated that he was "not positively sure" that he felt he did not have "something in [his] mind which would require more evidence to reach a decision." Id. He stated that "the evidence would have to be very strong" and that it "could be possible" that in view of his background "the net result would be that [he] would require perhaps a little more or possibly a little less evidence than another juror . . . . " Id., 586–87. *Oddy,* fairly viewed, does not avail the plaintiff.

sion to malpractice litigation would affect his impartiality in weighing the factual issues to be tried. *Davidson* v. *Grigsby,* 451 S.W.2d 632, 634 (Ky. 1970)." *Mackey* v. *Greenview Hospital, Inc.,* supra, 254.

Although this is admittedly a difficult case, we disagree with the plaintiff's characterization of the juror's voir dire testimony. While it is true that the juror expressed some antipathy as to both the nature of certain malpractice suits that have been brought in recent years and the size of the awards, the juror did make clear that this antagonism was a generalized opinion held in the abstract and that it would not enter into his consideration of this specific case. The juror never indicated any antagonism toward this particular plaintiff. In fact, the juror stated that "in specific cases, I could accept any testimony and come out with a conclusion about it." While the juror opined that he believed that many malpractice suits are frivolous and without valid grounds, he also recognized that some malpractice claims are justified and that sometimes plaintiffs with meritorious claims are not adequately compensated. In addition, the juror repeatedly stated that he could be fair and impartial. "While we recognize that a juror's assurances that he or she is equal to the task are not dispositive . . . we are aware of the broad discretion of a trial judge which includes his determination of the credibility to be given a juror's statement in this context." (Citation omitted.) *State* v. *Cubano,* supra, 92. The determination as to a potential juror's impartiality, in which demeanor plays an important part, is particularly within the province of the trial judge and the trial judge has broad discretion in deciding whether to excuse a juror for cause. *Welch* v. *United States,* 466 A.2d 829, 836 (D.C. App. 1983); *Rease* v. *United States,* 403 A.2d 322, 325 (D.C. App. 1979), quoting *Rideau* v. *Louisiana,* 373 U.S. 723, 733,

83 S. Ct. 1417, 10 L. Ed. 2d 663 (1963) (Clark, J., dissenting); see *Mackey* v. *Greenview Hospital, Inc.*, supra. Under the circumstances of this case, the trial court did not abuse its discretion in denying the plaintiff's challenge for cause.[15]

There is no error.

In this opinion the other justices concurred.

---

[15] The plaintiff argues that this juror's bias was such that it required the plaintiff to sustain a higher burden of proof at trial. During oral argument, the plaintiff placed great emphasis on the following colloquy between the plaintiff's attorney and the juror:

"[Attorney Tillinghast]: Would not the scale be just slightly tipped in the favor of the defendant? Just slightly because—

"[Juror]: Until I heard the evidence and when I heard the evidence, I think I would make an objective conclusion.

"[Attorney Tillinghast]: Until you hear the evidence then, you start off just slightly tipped, is what you are saying? When you hear the evidence, it might balance out?

"[Juror]: I suspect that is the right answer.

"[Attorney Tillinghast]: Is that a fair statement?

"[Juror]: Sure.

"[Attorney Tillinghast]: And that slight unbalance, if we can call it that, is formed by your general opinion that such suits are not liked by you basically; is that right?

"[Juror]: Okay.

"[Attorney Tillinghast]: That is a fair statement?

"[Juror]: Sure."

Considering, as we must, the entire far-ranging voir dire which included, inter alia, the close questioning by the trial judge as well as counsel, and the juror's repeated assertions that his views were general and not specific, and that in an individual case he could be fair and impartial, we disagree that the juror's general opinion was so fixed as to change the plaintiff's burden of proof. Moreover, the trial judge was present during the voir dire and in a far better position than this court to evaluate the credibility of the juror. Rather than considering this isolated portion of the voir dire in vacuo, he considered all of the testimony. The trial judge did not err in denying the plaintiff's challenge for cause.