[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The petitioner, Martin Ziel, alleges in his petition for a Writ of Habeas Corpus initially filed on October 28, 1997 and amended on September 4, 2001, that his 1981 conviction for one count of murder in violation of CGS § 53a-54a was obtained in violation of the Sixth andFourteenth Amendments to the United States Constitution and Article I, Section 8 of the Constitution of the state of Connecticut. He claims: (a) to have been denied effective representation by his trial defense counsel, and (b) to have been denied due process of law when the trial court failed to dismiss the entire jury panel when it was disclosed that some prospective jurors had indicated in the jury room that the defendant was guilty. This matter came on for trial before this Court on February 5, 2003 and again on March 17, 2003 at which time testimony was received from the petitioner, and his trial defense counsel, Attorney Donald Dakers. The Court also admitted documentary evidence, including, interalia, the decision of the Connecticut Supreme Court in the petitioner's direct appeal.[1] For the reasons set forth more fully below, the petitioner has failed in meeting his burden of proof and the petition shall be denied.
As regards the claim of ineffective assistance of trial defense counsel, the petitioner alleges that his trial defense counsel failed to: consider the efficacy of a mental state defense at trial; peremptorily challenge two jurors who may have been biased by statements of other prospective jurors; conduct adequate pretrial discovery; conduct adequate cross-examination of the witnesses at the trial; and, make an adequate review of the physical evidence by employing forensic experts. In addition, the petitioner alleges that his trial defense counsel exerted undue pressure upon the petitioner not to accept the state's pretrial settlement offer.
The Court has reviewed all of the testimony and evidence and makes the following findings of fact (further facts will be related as necessary to CT Page 3772 resolve specific claims).
Findings of Fact
1. The petitioner was the defendant in a case in the Judicial District of New Haven under Docket Number CR80-7-63129 entitled State v. Ziel. The petitioner was charged with one count of murder in violation of CGS §53a-54a.
2. As for the facts of the underlying offenses, the jury could have reasonably found that in May 1980 the petitioner was searching for a house to purchase for himself and his family. The victim, Jack Abrams, was selling a house located at 595 Williams Road in Wallingford. Although the petitioner was unemployed, he made arrangements to buy Mr. Abrams' house, indicating that the purchase price would be obtained from a rich uncle. In anticipation of the sale, Mr. Abrams allowed the petitioner and his family to move into the unoccupied upper floor of the Williams Road house on May 12, 1980.
3. The following evening the petitioner and Mr. Abrams left the Williams Road house together, purportedly going to the home of the petitioner's uncle to obtain the purchase money for the house. The petitioner took a handgun with him.
4. The next day Mr. Abrams failed to attend a conference at which his presence was required. His body was eventually discovered on July 2, 1980. Mr. Abrams had died from gunshot wounds to the head.
5. At the trial, the state introduced evidence linking the petitioner to Mr. Abrams' death. A forensic expert testified that the bullets removed from the victim's head had been fired from the petitioner's gun. Stains matching the victim's blood type were found in the petitioner's car. Also found in the petitioner's car were hair samples matching Mr. Abrams' hair and slivers of glass identified by Mr. Abrams' optician as fragments of glasses he had prescribed for the victim. Soil samples taken from a shovel found in the petitioner's car matched soil from the site where the body was found. The petitioner himself admitted that he had been at the scene of the crime but he denied any involvement in the murder.
6. The petitioner was convicted by a twelve-member jury and on April 10, 1981 received a sentence from the Court, Hadden, J. of twenty-five years to life in prison.
7. Attorney Donald Dakers who was employed as a Public Defender CT Page 3773 in the Judicial District of New Haven at the time represented the petitioner.
8. There were no offers of a pretrial agreement or discussions of a reduced charge made by the state's attorney in this case.
9. The petitioner was the subject of a competency examination. This resulted in a finding that the petitioner was indeed competent to stand trial and was not suffering from any mental disease or defect.
10. Attorney Dakers has some concerns about the intellectual capacity of the petitioner and requested that the competency evaluation also include an IQ test.
11. The test revealed that the petitioner had an IQ of approximately 70.[2] Attorney Dakers was satisfied that the petitioner was able to understand the proceedings.
12. Attorney Dakers did not order any further forensic testing upon the physical evidence because he was satisfied that the state's experts had done a satisfactory job.
13. There were appropriate pretrial discovery motions filed by the defense and answered appropriately by the state.
14. One of the potential jurors made comments in the jury assembly room to the effect that the petitioner was guilty. This potential juror was dismissed and was not a member of the petitioner's jury.
15. Attorney Dakers sought to dismiss the entire panel but the Court denied that motion.
16. Attorney Dakers conducted extensive voir dire examination of the other jurors who were exposed to the improper comments by the potential juror. Two members of this panel were seated on the petitioner's panel.
17. Attorney Dakers declined to exercise a preemptory challenge to these two jurors because he did not want to exhaust his preemptory challenges and he was convinced that these jurors would be fair and impartial.
Discussion of Law
It is important at the outset to understand a critical difference between the legal status of a person who has been accused of a crime as CT Page 3774 opposed to one who has been convicted of a crime. While the person who has been accused of a crime is entitled to a presumption of his or her innocence, the petitioner in a habeas corpus petition is not. "It is undoubtedly true that `[a] person when first charged with a crime is entitled to a presumption of innocence, and may insist that his guilt be established beyond a reasonable doubt. In re Winship, 397 U.S. 385,90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).' Herrera v. Collins, 506 U.S. 390,113 S.Ct. 853, 859, 122 L.Ed.2d 203 (1993). . . The presumption of innocence, however, does not outlast the judgment of conviction at trial . . . Thus, in the eyes of the law, [the] petitioner does not come before the Court as one who is `innocent,' but on the contrary as one who has been convicted by due process of law." Summerville v. Warden, 229 Conn. 397
at 422-23 (1994).
 I. Denial of Effective Trial Defense Counsel
In considering the alleged deficient performance of the petitioner's trial defense counsel, his claim of ineffective assistance of counsel must satisfy both prongs of the test set forth by the United States Supreme Court in Strickland v. Washington, 466 U.S. 688, 104 S.Ct. 2052,80 L.Ed.2d 674, reh. denied, 467 U.S. 1267, 104 S.Ct. 3562,82 L.Ed.2d (1984), before the Court can grant relief. Specifically, the petitioner must first show "that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by theSixth Amendment." Strickland, infra, at 687. If, and only if, the petitioner manages to get over the first hurdle, then the petitioner must clear the second obstacle by proving "that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Strickland, infra, at 687. In short, the petitioner must show both deficiency and prejudice. A failure to prove both, even though counsel's trial performance may have been substandard, will result in denial of the petition.
Trial in this Court of a habeas petition is not an opportunity for a new counsel to attempt to re-litigate a case in a different manner. It is indisputable fact that many times if one had foreknowledge of certain events; different courses might well have been taken. Likewise, a habeas court knowing the outcome of the trial "may not indulge in hindsight to reconstruct the circumstances surrounding the challenged conduct, but must evaluate the acts or omissions from trial counsel's perspective at the time of trial." Beasley v. Commissioner of Corrections,
CT Page 377547 Conn. App. 253 at 264 (1979), cert. den., 243 Conn. 967 (1998). "A fair assessment of an attorney's performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances to counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Henry v. Commissioner ofCorrection, 60 Conn. App. 313 at 317 (2000).
It is not even necessary to consider whether a trial counsel's performance was deficient if the habeas court is satisfied that there was no prejudice to the defendant by the actions of the trial counsel in representing the petitioner. "A reviewing court can find against a petitioner on either ground, whichever is easier. Strickland v.Washington, supra, 697; see Nardini v. Manson, 207 Conn. 118, 124,540 A.2d 69 (1988) (`[a] court deciding an ineffective assistance of counsel claim need not address the question of counsel's performance, if it is easier to dispose of the claim on the ground of insufficient prejudice')." Valeriano v. Bronson, 209 Conn. 75 at 86 (1988).
In the instant case, it is clear that the petitioner's trial defense counsel adequately represented the petitioner. The petitioner was charged with murder and the evidence against the petitioner was strong. The state had strong forensic evidence that the murder had taken place in the petitioner's car. The victim's blood was in the car as were hair and slivers of optical glass. The fatal shots were fired from a gun owned by the petitioner[3] and there was a shovel in the defendant's car that contained soil samples that matched the location at which the victim's body was found. Moreover, the petitioner had told conflicting stories to the police, initially indicating that he had given the victim a ride to New Haven on the night that he disappeared, and later telling the police that he had been at the murder scene when two unknown men approached and ordered him out of the car leaving the victim in the car. The petitioner said that when he returned to the car, the victim and the unknown men were gone. The obvious implication of this story is that these two unidentified men murdered the victim. The jury verdict is quite reasonable given this evidence.
Insofar as the specific allegations of deficiencies in performance by the trial defense counsel, the evidence adduced at the habeas trial is clear that there simply is no issue as to the mental state of the petitioner that could have been raised. Likewise, there have been no deficiencies in discovery proven by the petitioner. Since there never was a pretrial offer from the state that could have been accepted by the CT Page 3776 petitioner, there is no way that the trial defense counsel could have pressured the petitioner to reject the offer. Moreover, there is no hint of any pressure, undue or otherwise, that the trial defense counsel might have brought to bear on the petitioner to force him to plead not guilty. The only allegation of ineffective cross-examination involves a complaint that the petitioner's wife had been threatened by the state's attorney and that his trial defense counsel failed to ask her about that. This, being the only evidence introduced in the habeas trial concerning cross-examination, does not give the Court a sufficient basis to find any deficient performance by the trial defense counsel, much less that this constituted any sort of prejudice to the petitioner. Consequently, the petitioner is found to have failed in his burden of proof in this regard.
As regards the two jurors who were not peremptorily challenged, the Court finds that the decision to allow these two persons to sit was not deficient performance by the trial defense counsel. It is clear that there was an incident in the jury assembly room that might have tainted these two jurors. Notwithstanding, Attorney Dakers did conduct extensivevoir dire of the two jurors and was satisfied that they could be fair and impartial. While some might say that he should have used a preemptory challenge nonetheless, there are others who would affirm that his decision to husband his limited number of preemptory challenges for a more appropriate juror was correct. The decision to preempt or not to preempt is a tactical decision that had to be made by the trial defense counsel at the moment. It is clearly inappropriate to attempt to second-guess his decision over twenty years later.
Count II: Denial of Due Process
The petition for a writ of habeas corpus is not a substitute for a direct appeal. "We have repeatedly and emphatically stated that habeas corpus cannot be used as an alternative to a direct appeal. Blue v.Robinson, 173 Conn. 360 (1977); Vena v. Warden, 154 Conn. 363 (1966);Wojculewicz v. Cummings, 143 Conn. 624 (1956)." What this means is that the petitioner cannot, as a sole basis for the granting of the habeas petition, allege that he was convicted as a result of an issue that he could have raised on direct appeal. However, he "may collaterally raise federal constitutional claims in a habeas corpus proceeding even though he has failed to appeal his federal constitutional claims directly . . . if he alleges and proves, by a fair preponderance of the evidence, facts which will establish that he did not deliberately bypass the orderly procedure of a direct appeal." Vena v. Warden, 154 Conn. 363 at 366
(1996).[4]
It is clear in the instant case that the petitioner not only could have CT Page 3777 raised the issue of a due process violation by empanelling the two jurors that heard the improper comments in his direct appeal, he did so. Moreover, the issue was decided against the petitioner. "`[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation . . . Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.' Smith v.Phillips, 455 U.S. 209, 217, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). The record nowhere reflects that the exposure to the discussions held in the jury room affected either of the two jurors in such a way as to prevent their judging the defendant fairly and impartially. Each was individually interrogated and carefully admonished. This being so, we cannot conclude that the trial court's denial of the defendant's motions to dismiss the entire jury panel, `in light of the assurances of impartiality' unequivocally given by each of these two jurors during their voir dire
examinations, deprived the defendant of a fair trial. State v. Marra,supra, 434." State v. Ziel, 197 Conn. 60 at 67 (1985).
The respondent has raised a claim of procedural default as a defense to paragraph 3b of Count I and the entirety of Count II. The Court rejects the claim of procedural default as to paragraph 3b of Count I because Count I alleges a claim of ineffective assistance of counsel by not exercising the preemptory challenges. This question is independent of the issue as to whether or not the petitioner was denied due process when the trial court allowed the two challenged jurors to sit. A claim of ineffective assistance of counsel is appropriately raised in a petition for habeas corpus and not on direct appeal. State v. Leecan, 198 Conn. 517
(1986). Nevertheless, while the defense of procedural default as regards ineffective assistance of counsel is rejected, as has been previously held in this memorandum, the performance of the trial defense counsel was not deficient nor was there any prejudice to the petitioner.
Since the petitioner did raise the issue of denial of due process in his direct appeal, the respondent's reliance upon a claim of procedural default as a defense is misplaced. In reality, the claim in Count II has been fully litigated in the petitioner's direct appeal. Therefore, the doctrine of res judicata applies to prevent the petitioner from attempting to relitigate the issue in a petition for habeas corpus.Thorpe v. Commissioner of Corrections, 73 Conn. App. 773 (2002). Therefore, while Count II of the habeas petition is not defeated by the procedural default rule, it is defeated by the doctrine of res judicata.
Accordingly, the Petition for a Writ of Habeas Corpus is denied.
S.T. Fuger, Jr., Judge CT Page 3778