## MARTIN ZIEL *v.* COMMISSIONER OF CORRECTION (AC 24685)

Bishop, DiPentima and Foti, Js.

Argued March 28—officially released May 31, 2005

*Sean K. Crowshaw*, special public defender, for the appellant (petitioner).

*Julia K. Conlin,* deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Linda N. Howe,* senior assistant state's attorney, for the appellee (respondent).

*Opinion*

PER CURIAM. The petitioner, Martin Ziel, appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly concluded that he failed to prove his claim of ineffective assistance of counsel. Specifically, he claims that his trial counsel should have exercised peremptory challenges to excuse two potentially biased jurors. We affirm the judgment of the habeas court.

We take the factual background of this case from the petitioner's direct appeal, *State* v. *Ziel,* 197 Conn. 60, 495 A.2d 1050 (1985): "In May, 1980, the [petitioner] was searching for a house to purchase for himself and his family. The victim, Jack Abrams, was selling a house located at 595 Williams Road in Wallingford. Although the [petitioner] was unemployed, he made arrangements to buy Abrams' house, indicating that the purchase price would be obtained from a rich uncle. In anticipation of the sale, Abrams allowed the [petitioner] and his family to move into the unoccupied upper floor of the Williams Road house on May 12, 1980.

"The following evening the [petitioner] and Abrams left the Williams Road house together, purportedly going to the home of the [petitioner's] uncle to obtain the purchase money for the house. The [petitioner] took a handgun with him.

"The next day Abrams failed to attend a conference at which his presence was required. His body was eventually discovered on July 2, 1980. Abrams had died from gunshot wounds to the head.

"At the trial, the state introduced evidence linking the [petitioner] to Abrams' death. A forensic expert testified that the bullets removed from the victim's head had been fired from the [petitioner's] gun. Stains matching the victim's blood type were found in the [petitioner's] car. Also found in the [petitioner's] car were hair samples matching Abrams' hair and slivers of glass identified by Abrams' optician as fragments of glasses he had prescribed for Abrams. Soil samples taken from a shovel found in the [petitioner's] car matched soil from the site where the body was found. The [petitioner] himself admitted that he had been at the scene of the crime but he denied any involvement in the murder.
. . .

"During the voir dire examination of one prospective juror, it was disclosed that a panel of potential jurors had possibly been affected by a conversation [that] occurred during the voir dire proceedings. The juror testified that he had heard about the [petitioner's] case from media reports and he admitted that he had discussed those reports with other prospective jurors while waiting in a jury room to be called for his examination. He did not recall that anyone expressed an opinion as to the guilt or innocence of the [petitioner]. The [petitioner] then moved that the entire jury panel be dismissed. The trial court, *Zoarski, J.*, denied the motion, ruling that 'we will have to take each individual juror on the merits of [his] responses on the voir dire.' The juror was dismissed for cause because his responses, upon further inquiry, indicated that he would be unable to set aside his opinion that the [petitioner] was 'probably guilty.'

"The [petitioner] renewed his motion to excuse the entire panel of jurors when the next juror revealed that 'several jurors' had expressed their opinions that the [petitioner] was guilty. The trial court again denied the motion stating that it would have the remaining jurors

brought in the next morning to 'try to establish if any of them based on any discussions that have taken place and . . . as a result of any overheard discussions, have drawn any conclusions [that] would in any way affect their ability to sit on this jury. I can do that and I will determine whether anybody based on what [he or she] may have overheard should be excused.'

"The next day, the trial court summoned the entire panel of jurors into the courtroom and instructed them collectively not to discuss the case at all in the jury room. It also admonished them to avoid forming any opinions until after the case had been submitted to them.

"Individual interrogation of the panel members then continued. Eight jurors were dismissed for cause by the trial court, some for reasons unrelated to the discussions in the jury room. The [petitioner] exercised three of his peremptory challenges in excusing jurors from this panel; the state exercised two peremptory challenges. Consequently, only two members of the possibly tainted panel were chosen as jurors for the [petitioner's] trial.

\* \* \*

"During voir dire examination, the first juror testified that he had heard some conversations concerning the reports of the [petitioner's] case in the jury room but that he had not participated in those discussions nor had he personally formed any opinion as to the guilt or innocence of the [petitioner]. Although he had heard two or three people state that, in their opinion, the [petitioner] was 'probably guilty,' he maintained that he would have to hear the evidence before forming an opinion. At the end of the examination, the [petitioner] indicated that he wished to challenge the juror for cause 'on the basis of the discussions and the opinions that he has heard of the probability of guilt of the [peti-

tioner].' The trial court denied the motion and the [petitioner] accepted the juror.

"The second juror stated during her voir dire examination that she had overheard some conversations pertaining to the guilt of the [petitioner] but that she did not think anyone had seriously formed an opinion but, rather, that '[t]hey were just fooling around.' She stated several times that she had formed no opinion as to the [petitioner's] guilt. The [petitioner] challenged the juror for cause, restating his previous position. The trial court denied the motion and the juror was accepted." (Citations omitted.) Id., 61–66. Our Supreme Court concluded that the trial court properly denied the [petitioner's] motions to dismiss the entire jury panel. Id., 67.

The petitioner filed his petition for a writ of habeas corpus on October 28, 1997, and an amended petition on September 4, 2001. The court denied the petition on March 18, 2003, finding that the petitioner had failed to prove both that trial counsel had been ineffective and that the petitioner had been deprived of his due process rights.[1] Certification to appeal was granted, and this appeal followed.

As a prelude to our discussion of the issues on appeal, we set forth our standard of review as well as an overview of relevant habeas corpus law. "Our standard of review in a habeas corpus proceeding challenging the effective assistance of trial counsel is well settled. Although a habeas court's findings of fact are reviewed under the clearly erroneous standard of review . . . [w]hether the representation a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires

---

[1] The court found that although the petitioner raised the issue of due process in his direct appeal, that claim was defeated by the doctrine of res judicata. The petitioner has not raised that claim in the present appeal.

plenary review by this court unfettered by the clearly erroneous standard." (Citation omitted; internal quotation marks omitted.) *Alvarez* v. *Commissioner of Correction*, 79 Conn. App. 847, 848, 832 A.2d 102, cert. denied, 266 Conn. 933, 837 A.2d 804 (2003).

The petitioner's right to the effective assistance of counsel is assured by the sixth and fourteenth amendments to the federal constitution, and by article first, § 8, of the constitution of Connecticut. "In *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction . . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." (Citations omitted; internal quotation marks omitted.) *Minnifield* v. *Commissioner of Correction*, 62 Conn. App. 68, 70–71, 767 A.2d 1262, cert. denied, 256 Conn. 907, 772 A.2d 596 (2001).

In our review, we strongly presume that counsel's professional assistance was reasonable, and the petitioner has the burden to overcome the presumption that his attorney was employing sound trial strategy. *Lacks* v. *Commissioner of Correction*, 87 Conn. App. 225, 230, 866 A.2d 660, cert. denied, 273 Conn. 922, 871 A.2d 1027 (2005). We evaluate the conduct from trial counsel's perspective at the time. *Alvarez* v. *Commissioner of Correction*, supra, 79 Conn. App. 849. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Internal

quotation marks omitted.) *Goodrum* v. *Commissioner of Correction*, 63 Conn. App. 297, 300–301, 776 A.2d 461, cert. denied, 258 Conn. 902, 782 A.2d 136 (2001).

With respect to the prejudice component of the *Strickland* test, the petitioner must demonstrate that "counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable." *Strickland* v. *Washington*, supra, 466 U.S. 687. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding. . . . Rather, [t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. . . . When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." (Citations omitted; internal quotation marks omitted.) *Fair* v. *Warden*, 211 Conn. 398, 408, 559 A.2d 1094, cert. denied, 493 U.S. 981, 110 S. Ct. 512, 107 L. Ed. 2d 514 (1989).

With those principles in mind, we now turn to the petitioner's claim. The court found that Donald D. Dakers, the petitioner's trial counsel, had conducted an extensive voir dire examination of the jurors on the possibly tainted panel. The court also found that Dakers had declined to exercise a peremptory challenge of either of the two jurors chosen from the possibly tainted panel because he did not want to exhaust the petitioner's peremptory challenges. Dakers was convinced that those two jurors would be fair and impartial, and we cannot conclude that Dakers' decision was unreasonable. The petitioner argues that if Dakers had used the peremptory challenges to excuse those two jurors and

subsequently exhausted all of the challenges,[2] he could have asked for more. We find that argument to be too speculative for further discussion.

The court found that Dakers' decision not to exercise the petitioner's limited peremptory challenges was made after extensive voir dire, and only after Dakers was convinced that both jurors would be fair and impartial. The court concluded that the decision was a reasonable tactical one.[3] We agree that the petitioner failed to satisfy the deficient performance prong of *Strickland*.

The judgment is affirmed.

---

[2] Dakers in fact had exhausted all of the petitioner's peremptory challenges. *State* v. *Ziel,* supra, 197 Conn. 63 n.1.

[3] Having found no deficient performance, the court did not address the prejudice prong of *Strickland*.