STATE OF CONNECTICUT *v.* LEROY KEMMEL GRANT
(3952)

DUPONT, C. J., BORDEN and DALY, Js.

Argued April 10—decision released July 15, 1986

*M. Daniel Friedland,* for the appellant (defendant).

*Harry Weller,* special assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attor-

ney, *Jeremy N. Weingast* and *Curtissa Cofield Rivera,* assistant state's attorneys, and *James G. Clark,* deputy assistant state's attorney, for the appellee (state).

DALY, J. The defendant was convicted by a jury of possession of less than four ounces of a cannabis-type substance, a violation of General Statutes § 21a-279 (c) and of the sale of a controlled substance, a violation of General Statutes § 21a-277 (b). The defendant was found not guilty of possession of a controlled substance with the intent to sell, a violation of General Statutes § 21a-277 (b). In his appeal from the judgment, the defendant challenges the trial court's disposition of the following: (1) the jury array; (2) the jury selection process; (3) the failure to excuse a juror during trial; and (4) the failure to charge the jury on the defense of entrapment.

From the evidence adduced at trial, the jury could reasonably have found the following facts. On September 5, 1984, Hartford police officer Ann Cody was assigned to attempt the purchase of any type of controlled substance in Keney Park. She drove into the park that morning dressed as a hippie in a motor vehicle with New York registration plates. She had a prerecorded $5 bill with which to effectuate a purchase. Around 11:30 a.m., she approached a man seated in the parking lot and inquired where she could buy marihuana. She was informed to wait and that the "man" would be right out. Subsequently, the defendant appeared at the driver's side of her vehicle. In return for the $5 bill, she received a plastic envelope from the defendant and left the park.

Cody returned to the parking area with Sergeant Jeffrey Flaherty and Lieutenant Thomas Moore and found the defendant. After Cody identified him as the seller of the marihuana, the defendant was arrested and searched. The $5 bill was found in the defendant's

possession. A search of the nearby wooded area whence the defendant had emerged was instituted because it is customary for dealers to have a supply nearby. The officers eventually located a pile of six plastic bags near the root of a tree, close to the area from which the defendant had entered the parking area. Detective James Chrystal photographed the tree cache. Subsequently, the defendant was charged with the three counts upon which he was tried.

The case was first docketed on the firm jury trial list on November 19, 1984, and reappeared on the list on five other occasions. The defendant was notified each time the case was docketed until the jury selection process commenced, at which time, the defendant orally indicated that he intended to challenge what he claimed to be a group of all white veniremen. Two days later, the defendant filed a written motion to dismiss the array after the jury panel had been selected and the case was ready to proceed to trial. The defendant claimed that the array did not represent a fair cross section of the community.

The trial court properly denied the motion to dismiss for failure to comply with Practice Book § 842 which provides that "[a]ny party may challenge an array on the ground that there has been a material departure from the requirements of law governing the selection and summoning of an array. Such challenge shall be made within five days after notification of the hearing or trial date, unless the defect claimed has arisen subsequent to the time required to make such motion."

The claim that the jury was not a representative group "is not supported by the record since no evidence pertinent to the issue was introduced. Defense counsel merely stated to the court that it was his belief that the entire jury panel was white and made no effort to substantiate this statement. . . . Substantiation of the

claim . . . 'requires something more than defense counsel's speculation.' " *State* v. *McClain,* 171 Conn. 293, 294–95, 370 A.2d 928 (1976).

The defendant next claims that, during the jury selection process, either the state's attorney or the trial court systematically excluded prospective jurors who believed that the marihuana and narcotics laws were overly harsh. We decline to review this claim because the defendant failed to comply with Practice Book § 3060F (c). That rule provides in relevant part that an appellant's brief shall contain "[a] statement of the nature of the proceedings and of the facts of the case. The statement of facts shall be in narrative form, and shall be supported by appropriate references to the page or pages of the record or transcript upon which the party relies. The statement of facts should not be detailed or voluminous but must be confined strictly to facts bearing upon the questions raised. An appellant may not rely upon any fact unless it is set forth in his statement of facts or is incorporated into his brief . . . ."

The defendant also claims error in the failure of the court to select alternate jurors. We disagree. Section 54-82h (a) of the General Statutes provides in pertinent part: "In any criminal prosecution to be tried to the jury in the superior court if it appears to the court that the trial is likely to be protracted, the court may, in its discretion, direct that, after a jury has been selected, two or more additional jurors shall be added to the jury panel, to be known as 'alternative jurors.' " "The trial court, when empaneling a jury, has . . . broad discretion in its rulings." *State* v. *Ziel,* 197 Conn. 60, 65, 495 A.2d 1050 (1985). "In reviewing the correctness of the trial court's ruling in such a matter, the trial court enjoys the presumption that its decision in a matter of discretion was correct." *State* v. *Johnson,* 188 Conn. 515, 520, 450 A.2d 361 (1982); see Holden &

Daly, Connecticut Evidence (1966 and Sup. 1983) § 35. We find no abuse of discretion in the trial court's decision not to select alternate jurors.

After the trial had progressed for approximately two days, juror Ann Kiessel informed the trial court that she was acquainted with officer Chrystal, whom she had seen in the courthouse. Chrystal had not been mentioned as a possible witness to the jurors because it was not anticipated that he would be called by the state. When the defendant was arrested, he gave his name as "Donald Dickson." Chrystal was scheduled to be called as a witness to establish the defendant's identity through fingerprint records. The defendant stipulated, however, that he was the person arrested in Keney Park, thus eliminating the need for Chrystal's testimony. When the photographs which Chrystal had taken in the park were misplaced, it appeared that he might be a potential witness. The photographs, however, were found and introduced through another police officer, eliminating the need for the state to call Chrystal to testify. The defendant called Chrystal as his own witness and claims that the trial court erred in not allowing him to voir dire Kiessel personally during the course of the trial to determine the extent of her relationship with Chrystal.

The trial court conducted an inquiry of Kiessel who indicated that she felt that she could be fair and impartial as a juror and that her judgment would not be affected if Chrystal were a witness. The defendant moved for a mistrial[1] which was denied. In the motion, he claimed that he had been deprived of the right to examine Kiessel during trial once the apparent bias

[1] Practice Book § 887 provides in pertinent part: "Upon motion of a defendant, the judicial authority may declare a mistrial at any time during the trial if there occurs during the trial an error or legal defect in the proceedings, or any conduct inside or outside the courtroom which results in substantial and irreparable prejudice to the defendant's case. . . . "

became known. " 'This court does not choose to create a set of unreasonably constricting presumptions that jurors be excused for cause due to certain occupational or other special relationships which might bear directly or indirectly on the circumstances of a given case, where, as here, there is no showing of actual bias or prejudice. . . . [T]his court adheres to the principle that a defendant must "raise a contention of bias from the realm of speculation to the realm of fact." The trial court, in turn, when empaneling a jury, "has a serious duty to determine the question of actual bias, and a broad discretion in its rulings on challenges therefor." ' " *State* v. *Clark,* 164 Conn. 224, 228, 319 A.2d 398 (1973), quoting *Mikus* v. *United States,* 433 F.2d 719, 724 (2d Cir. 1970); *State* v. *Ziel,* supra.

Unlike the formal pretrial voir dire proceeding where counsel has the right to examine potential veniremen, once a juror is selected and trial has commenced, the issue of any further inquiry by counsel into a juror's status is subject to the discretion of the trial court and is not a matter of right. It might well be that to allow counsel to examine a juror might itself give rise to prejudice that may taint the trial court proceedings. Here, there was no abuse of the trial court's discretion.

The defendant claims that Chrystal was a "pivotal, key witness" in the case, therefore, entitling the defense personally to question Kiessel about her potential bias. It should be noted that no prejudice resulted since the only count in which Chrystal participated resulted in a not guilty finding by the jury. If Kiessel's acquaintance with Chrystal could be considered a form of jury misconduct, the test is " 'whether or not the misconduct has prejudiced the defendant to the extent that he has not received a fair trial.' *United States* v. *Klee,* [494 F.2d 394, 396 (9th Cir. 1974)]. A trial court has a large measure of discretion in dealing with a motion for a mistrial; *State* v. *Martinez,* 173 Conn. 541, 544, 378 A.2d 517 ( 1977); and its decision as to fair-

ness of the trial must be afforded great weight. . . . " *State* v. *McCall,* 187 Conn. 73, 77, 444 A.2d 896 (1982). The conclusion of the trial court that Kiessel was capable of sitting impartially and rendering a true and just verdict must stand. *State* v. *Bowen,* 167 Conn. 526, 531, 356 A.2d 162 (1975). The defendant requested that Chrystal be called as a witness and hence cannot claim error in the action of the trial court which he had induced. *State* v. *Ross,* 189 Conn. 42, 47, 454 A.2d 266 (1983).

The defendant lastly claims that the trial court should have granted his request to charge the jury on the defense of entrapment. Entrapment is the inducement by a public servant or police officer of a person to engage in criminal conduct that had not been contemplated by him, for the sole purpose of instituting criminal prosecution against him. The defense is available to the defendant only if he would not have engaged in the proscribed conduct but for the inducement of a police officer. General Statutes § 53a-15; *State* v. *Avery,* 152 Conn. 582, 583, 211 A.2d 165 (1965). "Entrapment is inconsistent with guilt in a criminal case and if it existed entitles the defendant to acquittal. . . . Although entrapment is generally referred to as a defense, it is more properly treated as a fact inconsistent with guilt." *State* v. *Whitney,* 157 Conn. 133, 135, 249 A.2d 238 (1968). There is, in the present case, no evidence that the defendant either admitted to committing a crime or that he was induced by the police to commit a crime in which he would not have engaged except for such inducement. Therefore, the court did not err in refusing to instruct the jury on the defense of entrapment. *State* v. *Hawkins,* 173 Conn. 431, 436, 378 A.2d 534 (1977); *State* v. *Avery,* supra, 584; *State* v. *Piland,* 2 Conn. App. 513, 515, 480 A.2d 588 (1984).

There is no error.

In this opinion the other judges concurred.