STATE OF CONNECTICUT *v.* CURTIS SIMS
(5211)

DUPONT, C. J., BORDEN and HENNESSY, Js.

Argued May 7—decision released September 8, 1987

*Elizabeth A. Curry,* special public defender, for the appellant (defendant).

*Robert J. Devlin, Jr.,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellee (state).

DUPONT, C. J. The defendant is appealing from a judgment of conviction, after a jury trial, of the crimes of robbery in the second degree, in violation of General Statutes § 53a-135 (a) (1), larceny in the second degree, in violation of General Statutes § 53a-123 (a) (3), and assault of a victim sixty or older in the third degree, in violation of General Statutes § 53a-61a (a). The defendant claims that the trial court committed error (1) by denying his motion to suppress the victim's show-up identification testimony, (2) by denying his motion for mistrial on the ground that a juror and a witness were acquainted, (3) by denying his request for a bill of particulars, and (4) in failing to strike the testimony of police officers concerning the crime due to the erasure of the police broadcast tape for the date of the crime.

The jury could reasonably have found certain relevant facts. The victim, a sixty-five year old man, walked out to his station wagon which was parked in front of his apartment building. He noticed three or four black males standing across the street. They asked him for a cigarette, to which he responded that he had none. While raising the tailgate to his station wagon, the victim was attacked and pushed into a snowbank. The assailants seized the victim's wallet, ripping his pants pocket in the process. He was struck in the face and

suffered minor injuries. The victim was unsure of how many individuals attacked him.

The victim saw two of his assailants flee, and briefly attempted to chase them. As he did so, he noticed their clothing. One was dressed in a distinctive brown, furry hat and light colored jacket. The other was wearing a brown jacket and dungarees. Although the victim did not see their faces, he observed that his assailants were black males. The crime was committed in the evening and its scene was illuminated by streetlights.

A neighbor called the police, to whom the victim gave the description of his attackers. The description was broadcast by police radio. Two undercover police officers in the area received the broadcast and saw three individuals who matched the description. The officers recognized two of the individuals from prior police investigations. As the unmarked police car pulled to the curb, one of the suspects yelled "Cops," and all three began to run. One suspect, Todd Branham, was immediately apprehended. The second suspect eluded the police and was never caught. After an extended chase, the third suspect, the defendant, was caught hiding beneath a parked car. The victim, who by invitation had entered a police car and heard on the radio the progress of the chase, was brought to a nearby supermarket parking lot to identify the two suspects.

The two suspects were individually shown to the victim. The victim identified Branham on the basis of his jacket and distinctive furry hat. The victim then also identified the defendant by his brown jacket. The fact that the defendant's clothes were wet, due to the earlier altercation in the snow, aided the victim's identification of the defendant. Branham subsequently confessed to the robbery, and testified for the prosecution. Prior to the commencement of summation by counsel, Branham notified the state's attorney's office that he was acquainted with one of the jurors. The trial judge,

after meeting in chambers on the record with counsel and the juror, returned the juror to the jury. The defendant's motion for a mistrial, based on the relationship between the juror and Branham, was denied. There were no alternate jurors.

I

In his first claim of error, the defendant asserts that the trial court erred in denying his motion to suppress the victim's out-of-court show-up identification of the defendant. Whether an identification procedure offends a defendant's due process rights depends on (1) whether it was impermissibly and unnecessarily suggestive, and (2) if so, whether the identification was nonetheless reliable based on the totality of the circumstances. *State v. Amarillo,* 198 Conn. 285, 293, 503 A.2d 146 (1986); *State v. Tate,* 9 Conn. App. 141, 144, 516 A.2d 1375 (1986).

While a one-on-one confrontation between a victim of a crime and a person whom the police present as a suspect is presumptively suggestive, it does not automatically follow that such a show-up is impermissibly suggestive. *State v. Collette,* 199 Conn. 308, 310, 507 A.2d 99 (1986). Prompt on-the-scene confrontations tend under some circumstances to ensure accurate identifications and the benefit of promptness not only aids reliability but permits a quick release of an innocent party if there is no positive identification, allowing the police to resume the investigation with only a minimum of delay. *State v. DeJesus,* 7 Conn. App. 309, 315–16, 508 A.2d 463 (1986).

The show-up in this case occurred only thirty-five minutes after the crime was committed. The defendant fit the description given to the police by the victim, and had fled when he observed approaching police officers. It was important for the police to determine promptly whether the defendant was involved. Under the circumstances of this case, the confrontation

between the victim and the defendant was reasonably necessary, and a permissible investigative technique. See, e.g., *State* v. *Mitchell,* 204 Conn. 187, 198–99, 527 A.2d 1168 (1987); *State* v. *Collette,* supra, 311; *State* v. *Hamele,* 188 Conn. 372, 377–78, 449 A.2d 1020 (1982); *State* v. *Tate,* supra, 145.

Even if we were to assume that the confrontation was unnecessarily suggestive, we conclude that under the totality of the circumstances the victim's identification of the defendant was sufficiently reliable to be admitted into evidence. The factors to be considered in determining the reliability of an identification "include the opportunity of the [victim] to view the criminal at the time of the crime, the [victim's] degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time lapse between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself." *Manson* v. *Brathwaite,* 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977).

In this case, the victim had a clear opportunity to observe the defendant as he fled the scene of the crime. The area was amply illuminated by streetlights. The victim had looked attentively at the defendant as the victim briefly attempted to chase the defendant. The victim's description of the defendant's clothing, while not exceptionally detailed, was accurate enough for the police to suspect the defendant. The description was certainly close enough to the mark to permit a jury to assess its ultimate correctness. The victim identified the defendant with a high degree of certainty at the confrontation. Further, the extremely short span of time between the crime and the show-up supports the reliability of the identification. Therefore, in view of the totality of the circumstances in this case, the trial court did not err in refusing to suppress the identification evidence. See *State* v. *Mitchell,* supra.

## II

The defendant's second claim of error is the trial court's denial of his motion for a mistrial based on the acquaintance of the state's principal witness with a juror. The court held an in camera hearing on the record with counsel and the juror, Darryl Toney. The court informed counsel that it alone would question the juror.[1] Satisfied of Toney's impartiality, the trial judge returned him to the jury. Following the hearing, the defendant moved for a mistrial,[2] claiming that the acquaintance between the juror and the state's witness substantially prejudiced his case. The court denied the motion for mistrial.[3]

---

[1] The following exchange took place:

"The Court: Did you recognize [the witness'] name when the introductions were made to you?

"Mr. Toney: No, I didn't.

"The Court: Did you know him personally?

"Mr. Toney: No, I don't. Not really personally. He has been at my sister's house sometimes. I know him that way but—

"The Court: You are not friends yourself.

"Mr. Toney: No.

"The Court: Does the fact that you know of him through your sister—is your sister older?

"Mr. Toney: Yes.

"The Court: Does that prevent you in any way from listening to the evidence fairly and impartially the way we asked you before?

"Mr. Toney: No, it doesn't.

"The Court: It doesn't change your position at all?

"Mr. Toney: No.

"The Court: You are not going to bend one way or the other in terms of the state of the defendant because of Todd Branham?

"Mr. Toney: No.

"The Court: Thank you very much. That is all that I have."

[2] Practice Book § 887 provides in pertinent part: "Upon motion of a defendant, the judicial authority may declare a mistrial at any time during the trial if there occurs during the trial an error or legal defect in the proceedings, or any conduct inside or outside the courtroom which results in substantial and irreparable prejudice to the defendant's case. . . ."

[3] In his brief, the defendant argues that the court's failure to allow defense counsel to question Toney after the disclosure of his acquaintance with the

The right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors. *Irvin* v. *Dowd,* 366 U.S. 717, 722, 81 S. Ct. 1639, 6 L. Ed. 2d 751 (1961); *State* v. *Ziel,* 197 Conn. 60, 64, 495 A.2d 1050 (1985). " 'Impartiality is not a technical conception. It is a state of mind. For the ascertainment of this mental attitude of appropriate indifference, the Constitution lays down no particular tests and procedure is not chained to any ancient and artificial formula.' " *Irvin* v. *Dowd,* supra, 724–25, quoting *United States* v. *Wood,* 299 U.S. 123, 145–46, 57 S. Ct. 177, 81 L. Ed. 78 (1936). The trial court is vested with wide discretion in determining the competency of jurors to serve, and that judgment will not be disturbed absent a showing of an abuse of discretion. *United States* v. *Tegzes,* 715 F.2d 505, 509 (11th Cir. 1983); *United States* v. *Carlin,* 698 F.2d 1133, 1135 (11th Cir.), cert. denied, 461 U.S. 958, 103 S. Ct. 2431, 77 L. Ed. 2d 1317 (1983); *State* v. *Ziel,* supra, 65.

Not every incident of juror misconduct requires a new trial. *United States* v. *Klee,* 494 F.2d 394, 396 (9th Cir.), cert. denied, 419 U.S. 835, 95 S. Ct. 62, 42 L. Ed. 2d 61 (1974). If Branham's acquaintance with the juror could be considered a form of jury misconduct, the test is "whether or not the misconduct has prejudiced the defendant to the extent that he has not received a fair trial." Id.; *State* v. *Cubano,* 203 Conn. 81, 91, 523 A.2d 495 (1987). A trial court has a large measure of discre-

state's witness constituted reversible error. Since this claim was not distinctly raised by the defendant at trial, we do not consider it here. See Practice Book § 4185. "The requirement that the claim be raised 'distinctly' means that it must be 'so stated as to bring to the attention of the court the *precise* matter on which its decision is being asked.' " (Emphasis added.) *State* v. *Carter,* 198 Conn. 386, 396, 503 A.2d 576 (1986). The defendant's claim in his brief that the court refused to allow him to question Toney at the in camera proceedings is belied by the record. He made no such request at that time. Although the defendant subsequently raised this issue in his motion for a new trial, he has not claimed as error the trial court's denial of his motion for a new trial.

tion in dealing with a motion for mistrial; *State* v. *Cubano,* supra, 93; *State* v. *Martinez,* 173 Conn. 541, 543–44, 378 A.2d 517 (1977); *State* v. *Grant,* 8 Conn. App. 158, 163–64, 511 A.2d 369 (1986); and its decision as to the fairness of the trial must be afforded great weight. *State* v. *McCall,* 187 Conn. 73, 77, 444 A.2d 896 (1982); *State* v. *Grant,* supra.

Under the circumstances of this case, the denial of the defendant's motion for mistrial was within the reasonable exercise of the trial court's broad discretion. Upon notification of the acquaintance between Branham and Toney, the court promptly held an in camera hearing, on the record, with the juror and both counsel present. The court's questioning of Toney revealed that the contacts between Toney and the witness were minimal. Indeed, Toney had not even initially recognized Branham. Toney indicated during the court's inquiry that he felt he could be a fair and impartial juror, and that his judgment would be unaffected by his slight acquaintance with Branham. While we recognize that a juror's assurances that he or she is equal to the task are not dispositive of the rights of an accused; *Murphy* v. *Florida,* 421 U.S. 794, 800, 95 S. Ct. 2031, 44 L. Ed. 2d 589 (1975); we are also aware of the broad discretion of a trial judge which includes his determination of the credibility to be given a juror's statement in this context. *United States* v. *Thompson,* 744 F.2d 1065, 1068 (4th Cir. 1984); *State* v. *Cubano,* supra, 92. The conclusion of the trial court that Toney was capable of sitting impartially and rendering a true and just verdict must stand. *State* v. *Bowen,* 167 Conn. 526, 531, 356 A.2d 162 (1935); *State* v. *Grant,* supra, 164.

## III

The defendant next claims that the trial court erred in denying his request for a bill of particulars. We disagree.

" 'The function of the bill of particulars . . . is to enable the defendant to obtain a more precise statement of the offense charged in the information in order to prepare a defense.' " *State* v. *Frazier,* 194 Conn. 233, 236, 478 A.2d 1013 (1984); *State* v. *Liebowitz,* 7 Conn. App. 403, 416, 509 A.2d 43 (1986). A motion for a bill of particulars is addressed to the sound discretion of the trial court; *State* v. *Stepney,* 191 Conn. 233, 241, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984); *State* v. *Brown,* 173 Conn. 254, 257, 377 A.2d 268 (1977); *State* v. *Beaulieu,* 164 Conn. 620, 624, 325 A.2d 263 (1973); and its denial will only be overturned upon a clear showing of prejudice to the defendant. *State* v. *Frazier,* supra; *State* v. *Liebowitz,* supra. The defendant argues that the denial of his request for a bill of particulars prevented him from adequately preparing a double jeopardy defense. The defendant's double jeopardy rights are not implicated in this case.[4] The defendant has not demonstrated that he suffered prejudice from the denial of his motion for a bill of particulars.

## IV

The defendant's final claim of error is that his convictions must be reversed because the state failed to

[4] The defendant was sentenced to serve consecutive terms on the convictions of robbery in the second degree, and larceny in the second degree. The double jeopardy clause of the United States constitution protects against multiple punishments for the same offense. *North Carolina* v. *Pearce,* 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969). The test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment was stated in *Blockburger* v. *United States,* 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932): " ' "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not . . . ." ' " *State* v. *Goldson,* 178 Conn. 422, 424, 423 A.2d 114 (1979). As robbery in the second degree, and larceny in the second degree, have mutually independent elements, the defendant's double jeopardy allegation is meritless.

comply with the disclosure provisions of the rules of practice. The trial court granted the defendant's motion to disclose the police broadcast tapes connected with the defendant's arrest. The tapes, however, were unavailable due to their erasure for reuse, prior to the request, by the New Haven police department. The defendant then filed a motion to strike[5] the testimony of the police officers concerning the arrest. The defendant claims as error the trial court's denial of his motion to strike.

"Since access to the statements of witnesses for the prosecuting authority is not a constitutional right; *United States* v. *Augenblick,* 393 U.S. 348, 356, 89 S. Ct. 528, 21 L. Ed. 2d 537 (1969), on remand, 509 F.2d 1157 (Ct. Cl.), cert. denied, 422 U.S. 1007, 95 S. Ct. 2628, 45 L. Ed. 2d 669 (1975); *State* v. *Pikul,* 150 Conn. 195, 202, 187 A.2d 442 (1962); the burden of showing prejudice rests on the defense." *State* v. *Gonzales,* 186 Conn. 426, 436 n.8, 441 A.2d 852 (1982); *State* v. *Anonymous (83-FG),* 190 Conn. 715, 736, 463 A.2d 533 (1983).

Our Supreme Court has recently considered similar claims involving the erasure of tape recorded evidence. See *State* v. *Pollitt,* 205 Conn. 61, 530 A.2d 155 (1987); *State* v. *Mullings,* 202 Conn. 1, 519 A.2d 58 (1987); *State* v. *Milum,* 197 Conn. 602, 500 A.2d 555 (1985); *State* v. *Myers,* 193 Conn. 457, 479 A.2d 199 (1984); *State* v. *Shaw,* 185 Conn. 372, 441 A.2d 561 (1981), cert. denied, 454 U.S. 1155, 102 S. Ct. 1027, 71 L. Ed. 2d 312 (1982).

---

[5] Practice Book § 755, entitled "Failure to Comply with Order," provides: "If the prosecuting authority elects not to comply with an order of the judicial authority to deliver to the defendant any statement of a witness who has testified or such portion thereof as the judicial authority may direct, the judicial authority shall strike from the record the testimony of the witness, and the trial shall proceed unless the judicial authority, in his discretion, upon motion of the defendant, determines that the interests of justice require that a mistrial be declared."

In *State* v. *Mullings,* supra, the destruction of a witness's tape recorded statement to the police was at issue. The court held that in the absence of bad faith on the part of the police department, "we have continued to adhere to the balancing test set forth in *Shaw* and *Myers* in determining whether a witness's testimony should be stricken." Id., 10. Whether or not sanctions for nondisclosure should be imposed depends upon the extent of the state's culpability in failing to make disclosable material available to the defense, when weighed against the amount of prejudice to the defense which resulted from the nondisclosure. *State* v. *Shaw,* supra, 386. "[T]his approach gives broad discretion to the trial court." *State* v. *Mullings,* supra.

We conclude that the police department's actions in this case were not conducted in bad faith. Our review of the record indicates that the New Haven police department attempted to comply with the Connecticut Supreme Court's directive to discontinue routine erasure of tape recorded material. *State* v. *Milum,* supra, 617; *State* v. *Myers,* supra, 466–68. Although the erasure in this case demonstrates that the police policy in this regard is far from perfect, it does negate an inference of bad faith.[6] It now must be determined whether the defendant has demonstrated the requisite

---

[6] The erased tape in this case was one containing twenty-four hours of police broadcasts for the day the crime was committed. In contrast, the missing material in *State* v. *Mullings,* 202 Conn. 1, 6, 519 A.2d 58 (1987), *State* v. *Milum,* 197 Conn. 602, 614, 500 A.2d 555 (1985), and *State* v. *Shaw,* 185 Conn. 372, 385, 441 A.2d 561 (1981), cert. denied, 454 U.S. 1155, 102 S. Ct. 1027, 71 L. Ed. 2d 312 (1982), were statements by witnesses tape recorded by the police. The foreseeability that production of individual witness statements would be required in the event of trial is far greater than in the case of a twenty-four hour police broadcast tape. The foreseeability of a need for the missing tape in the event of a trial is a factor in determining the state's culpability in failing to comply with the disclosure provisions of the Practice Book. See *State* v. *Myers,* 193 Conn. 457, 468, 479 A.2d 199 (1984).

degree of prejudice from the failure to disclose the police broadcast tapes so as to justify the imposition of sanctions against the state.

The defendant argues that the failure to disclose the police tapes was prejudicial in that, were they available, (1) he "might have" prevailed in suppressing the victim's identification testimony, and (2) the credibility of Branham would have been weakened. Even without the tapes, the defendant had ample opportunity to demonstrate that the victim's identification was impermissibly suggestive. Defense counsel conducted extensive examination of the victim concerning the circumstances surrounding the identification. Defense counsel also had copies of the police incident reports prepared by the officers involved in the broadcast. The availability of alternative sources for the missing material is a key factor in determining whether the defendant's case was prejudiced. *State* v. *Milum,* supra, 617–18; *State* v. *Myers,* supra, 467. We therefore conclude that the unavailability of the tapes did not significantly prejudice the defendant's efforts to suppress the identification testimony. Similarly, defense counsel extensively challenged Branham's credibility at trial. It is unclear how the police broadcast tapes, which contained principally the description and pursuit of the perpetrators of the crime, would have served to discredit the credibility of Branham. In the circumstances of this case, there was no prejudicial inaccessibility to disclosable matter that requires us to find the trial court erred in refusing to strike the testimony.

There is no error.

In this opinion the other judges concurred.