[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a petition seeking a writ of habeas corpus with respect to the purportedly illegal incarceration of the petitioner as a result of his conviction of and sentencing for committing robbery first degree in violation of Connecticut General Statutes Section 53a-134(a)(3).
On January 3, 1989, jury selection began for the petitioner's trial concerning a robbery which allegedly occurred on January 2, 1988 in Stratford. Jury selection finished on January 4, 1989, and the taking of evidence commenced the next day. During voir dire, a prospective juror, John Bracken, disclosed that he knew State's Attorney Donald Browne personally. (Petitioner's Exhibit A-1, pp. 28 and 29). Judge Ford, who was presiding over jury selection at this point, informed Bracken that Browne would not be participating in the case. The judge asked Bracken if he knew of any reason why he could not be fair if selected to serve as a juror on the case, and Bracken replied that he would be fair (Petitioner's Exhibit A-1, pp. 30 and 31). In response to questioning by counsel, Bracken indicated he would be open-minded, fair, and impartial and that he had no axe to grind with regard to either side (Petitioner's Exhibit A-1, pp. 35 and 36). He also noted that he would have to be absolutely certain of the petitioner's guilt before he would vote to find him guilty (Petitioner's Exhibit A-1, p. 32). The petitioner's defense attorney, Frank Riccio, did not challenge Bracken for cause nor exercise a peremptory challenge with respect to him, and Bracken did sit as a member of the jury (Petitioner's Exhibit A-1, p. 36). CT Page 2875
After the prosecution rested its case, the petitioner called as his first witness his mother who testified on direct examination that the petitioner was at her home when the robbery occurred (Petitioner's Exhibit A-2 pp. 360 to 369). On cross-examination the prosecutor attempted to impeach the credibility of this alibi witness by inquiring as to her failure to relate this information to law enforcement authorities following the petitioner's arrest (Petitioner's Exhibit A-2, pp. 371 to 373). Apparently, in order to heighten the improbability that her version of the petitioner's whereabouts was true, the prosecutor attempted to elicit from her that her son had been held in lieu of bond since his arrest (Petitioner's Exhibit A-2, p. 373).
Defense counsel objected, and Judge Sullivan, who presided over the taking of evidence in the case, excused the jury in order to hear argument on this issue (Petitioner's Exhibit A-2, p. 373). The trial judge warned the prosecutor that his inquiry into the petitioner's incarceration might form the basis for a mistrial (Petitioner's Exhibit A-2, p. 374). The judge sustained the objection and cautioned the prosecutor not to make reference to this topic again in the jury's presence (Petitioner's Exhibit A-2, p. 378). The judge advised both counsel that he intended to issue a cautionary instruction to the jury about the matter (Petitioner's Exhibit A-2, p. 378). He also asked if defense counsel was moving for a mistrial, and Attorney Riccio replied that he was not (Petitioner's Exhibit A-2, pp. 377 and 378). The jury returned to the courtroom, and the trial court ordered the jury to disregard any reference to the petitioner's whereabouts since his arrest (Petitioner's Exhibit A-2, p. 378).
On January 12, 1989, the jury returned a verdict of guilty, and on February 3, 1989, the petitioner was sentenced to serve fifteen years consecutive to any other sentence he might be serving. The petitioner appealed his conviction which conviction was affirmed by the Appellate Court, per curiam, 23 Conn. App. 801 (1990).
The petitioner's amended petition alleges that his constitutional right to counsel was violated because his defense attorney at his trial failed to render effective assistance to him in several different ways. However, before and during the habeas trial, the petitioner withdrew all CT Page 2876 claims except for two, viz. trial counsel's failure to ask Bracken the specific nature of his acquaintance with State's Attorney Browne and his subsequent failure to challenge him; and defense counsel's decision not to seek a mistrial after the prosecutor's exposure of the petitioner's incarceration to the jury.
There are two components of a claim of ineffective assistance of counsel. The petitioner must prove that his trial counsel's performance was deficient, and he must prove that the deficient performance prejudiced his defense, Johnson v. Commissioner, 218 Conn. 403 (1991), p. 424. Because the court concludes that the analysis of the prejudice component of the so-called Strickland test is dispositive, the court proceeds to address that issue directly. This analysis requires the court to determine whether the petitioner has proved that there was a reasonable probability that, but for his trial counsel's deficient conduct, the verdict would have been different, Ostoloza v. Warden, 26 Conn. App. 758 (1992), p. 761.
 A
The petitioner argues that the failure of his attorney to ask Bracken the specific nature of his acquaintance with State's Attorney Browne creates a presumption of prejudice relieving the petitioner from having to demonstrate the manner in which the outcome of his trial was affected by Bracken's membership on the jury. In other words, the petitioner asks this court to presume that acquaintance with State's Attorney Browne equals partiality toward the prosecution in this case. Arguably our Supreme Court has rejected a similar request on direct appeal, State v. Clark,164 Conn. 224 (1973), p. 228; as has the Appellate Court, State v. Grant, 8 Conn. App. 158 (1986), p. 164.
The petitioner justifies this presumption in the context of a habeas case by stressing that the petitioner is legally prevented from calling Bracken as a witness at the habeas trial. He cites, in his trial brief, cases which stand for the proposition that inquiry into the juror's deliberative process is forbidden. However, this court does not regard those cases as an impediment having prevented the petitioner from calling and questioning Bracken at the habeas hearing as to the very same information he criticizes Attorney Riccio CT Page 2877 for failing to address, i.e. how he knows State's Attorney Browne. The petitioner could also have called Browne to testify regarding any relationship with Bracken. The court declines to indulge in the presumption of prejudice requested.
That request itself acknowledges that the petitioner has been unable to point to anything in the record which indicates that, but for Bracken's presence on the jury, the outcome would have been different. The five other jurors, unfamiliar with State's Attorney Browne, also concluded that the prosecution had proved the petitioner's guilt beyond a reasonable doubt. Browne had no participation nor connection with the trial except to be in the trial prosecutor's chain of command. Bracken's responses in voir dire indicated that he could and would be fair and impartial. The petitioner's own expert witness, Attorney Ronald Gold, opined that, after reading the trial transcript, a jury was likely to convict the petitioner on the evidence adduced.
In its charge to the jury, the trial court instructed the jurors to avoid allowing sympathy play a role in their decision and to base their decision as to the petitioner's guilt on the evidence produced at trial. In the "absence of a fair indication to the contrary," it is presumed that the jurors followed the judge's instructions State v. Rasmussen,225 Conn. 55 (1993), p. 85.
It is the petitioner's burden to demonstrate that Bracken was partial toward the prosecution, and this demonstration "must be proved by facts, not by mere speculation or conjecture," Ibid, p. 84. The court finds that the petitioner has failed to meet its burden in this regard.
 B
The petitioner also claims that he was prejudiced by the failure of his trial counsel to move for a mistrial based on the prosecutor's cross-examination of his mother as to the petitioner's incarceration. Trial counsel did object to this line of questioning. The matter was argued outside the hearing of the jury. The trial judge cautioned the jury not to consider the petitioner's whereabouts between arrest and trial. The petitioner's position appears to be that because CT Page 2878 the motion for mistrial may have been granted and because the petitioner was ultimately convicted, the making of the motion would likely have resulted in a different outcome, viz. a re-trial.
The court is not persuaded that the trial judge was likely to have granted the motion. Although the trial judge initiated the inquiry regarding whether the petitioner was going to request a mistrial be declared, the trial judge had earlier indicated that he was prepared to sustain the objection and give a curative instruction. The record is insufficiently clear as to what course the trial court would have taken had a motion for mistrial been made.
But the court feels that the petitioner's argument in this regard is misplaced in any event. The petitioner focuses its prejudice argument on the outcome of the motion for a mistrial rather than on the likely outcome of the trial, but for trial counsel's allegedly substandard performance. In the case of Bunkley v. Commissioner,222 Conn. 444 (1992), our Supreme Court held that, where appellate counsel's representation was purportedly deficient, the prejudice component remains focused on the outcome of the trial and not merely the outcome of the appeal. The petitioner must establish not only that, but for appellate counsel's substandard performance, he would have succeeded in overturning the conviction, but also that "there remains a probability sufficient to undermine confidence in the verdict that resulted in his appeal," Ibid, p. 454. A petitioner must establish by a preponderance of the evidence that there is a reasonable probability that he remains burdened by an unreliable determination of guilt, Ibid.
This court regards the motion for mistrial situation as analogous. The habeas court does not restrict its determination as to whether a mistrial was the probable outcome, but rather the court must examine the entire trial to decide whether the effect of the jury hearing the purportedly improper reference to the petitioner's incarceration so tainted the trial so as to undermine confidence in the jury's verdict. The court concludes that the petitioner has failed to prove that the allegedly improper reference had this effect.
The reference appears to have been an isolated one. The CT Page 2879 jury was already aware that the petitioner had been arrested and charged with the robbery. The petitioner, having testified at trial, permitted the jury to learn that he had four felony convictions thereby watering down any negative connotation flowing from mere incarceration. The case against the petitioner rested heavily on the identification of the petitioner as the robber by one of the victims. That witness testified that she had observed the petitioner standing outside the restaurant where she worked for about twenty minutes before the robbery. She even made contact with him by signaling to him that the restaurant was not yet open for business. She recognized the petitioner because she went to the same high school he attended some years before. She had face-to-face contact with him during the robbery itself. She picked his photograph from among sixty and pointed to him as the robber in court. It is inconceivable to the court that the prosecutor's isolated reference to the petitioner's state of confinement played a significant role in persuading the jury of the petitioner's guilt.
Finally, the jury heard defense counsel object to the line of questioning. The jury learned that the objection had been sustained and the trial judge specifically instructed the jury at that time to disregard the reference. The trial judge reiterated this instruction generally at the conclusion of the case (Petitioner's Exhibit A-2, p. 572). As noted above, in the absence of fair indication to the contrary, it is presumed that the jurors followed these instructions, State v. Rasmussen, supra.
For the reasons stated above, the Court concludes that the petitioner has failed to meet his burden of proof and the petition is denied.
BY THE COURT,
Samuel J. Sferrazza, J. Judge, Superior Court CT Page 2880