STATE OF CONNECTICUT *v.* KENNETH WILDER
(AC 31369)

DiPentima, C. J., and Gruendel and Flynn, Js.

---

Argued January 31—officially released May 17, 2011

*Michael V. Laubach*, certified legal intern, with whom was *Elizabeth M. Inkster*, senior assistant public defender, for the appellant (defendant).

*Timothy F. Costello*, assistant state's attorney, with whom, on the brief, were *Michael L. Regan*, state's attorney, *Vincent Dooley*, senior assistant state's attorney, and *Thomas M. DeLillo*, assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. The defendant, Kenneth Wilder, appeals from the judgment of conviction, following a jury trial, of attempt to possess crack cocaine in violation of General Statutes §§ 53a-49 (a) (1) and 21a-279 (a) and possession of drug paraphernalia with intent to use in violation of General Statutes § 21a-267 (a). On appeal, the defendant claims that (1) the trial court improperly

failed to instruct the jury on the defense of entrapment and (2) the evidence presented at trial was insufficient for the jury to find beyond a reasonable doubt that he was guilty of possession of drug paraphernalia. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the morning of April 8, 2007, Officer Michael McKinney of the Norwich police department was operating undercover and posing as a drug dealer in the area of Boswell Avenue and Lake Street in Norwich. McKinney wore a concealed microphone and radio transmitter that delivered an audio feed to police officers stationed in an unmarked van parked nearby. He also carried crushed macadamia nuts in a small plastic bag to resemble crack cocaine. Inside the unmarked van, Sergeant James Tetreault and Officer Christopher Merrill monitored the audio feed and also could visually observe McKinney's location through the van's windows.

At approximately 2 a.m., the defendant rode into the area on a bicycle. The defendant initiated a conversation, asking McKinney if he "had anything." McKinney asked the defendant what he was looking for. The defendant responded "rock" which McKinney understood was a street term for crack cocaine. McKinney asked how much the defendant had to spend, and was told $20. McKinney responded that he only had $50 bags of cocaine for sale and told the defendant to go get more money. The defendant then rode a distance away on his bicycle before circling back. The defendant remained moving on his bicycle while they discussed a lower sale price. Again, McKinney refused, and the defendant rode away out of earshot. After the defendant had departed, Tetreault called McKinney on his cellular telephone and McKinney explained how the defendant had only $20, to which Tetreault responded, "I don't care, you sell it for twenty then."

Thereafter, the defendant returned on his bicycle and approached McKinney for a third time to barter for the drugs. McKinney agreed to sell them for $20 if the defendant would send other customers to him, and the transaction occurred. Both Tetreault and Merrill testified that they witnessed the transaction. Once the transaction was completed, the defendant rode south on Boswell Avenue and McKinney gave Tetreault and Merrill a physical signal that the transaction was completed.

The defendant testified that when he approached the area of Boswell Avenue and Lake Street, he heard someone calling his name and shouting, "Yo, yo, yo." The defendant admitted that he stopped and talked to that person. He further testified that "[i]t was only that one time I stopped and talked to him." It is of some significance that the defendant testified that he had only one encounter with McKinney. On appeal, the defendant argues that because there were three encounters, he was entitled to an entrapment defense instruction. The only evidence as to the last two encounters came from the testimony of McKinney, and the jury was entitled to credit his testimony. McKinney testified that the defendant broached the idea to purchase the drugs and that the defendant rode away and came back a second time, but McKinney refused the sale because of price. McKinney further testified that the defendant finally rode back a third time with $20 and purchased the drugs.

After a trial to a jury, the defendant was found guilty as charged and sentenced to a total effective sentence of eighteen months of imprisonment. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court erred in refusing his request for a jury instruction on the defense of entrapment. We disagree.

We begin by setting forth our standard of review. In reviewing the defendant's claim that he was entitled to instructions on entrapment, we look at the evidence in a light most favorable to his claim. See *State* v. *Connelly*, 46 Conn. App. 486, 507, 700 A.2d 694 (1997), cert. denied, 244 Conn. 907, 908, 713 A.2d 829, cert. denied, 525 U.S. 907, 119 S. Ct. 245, 142 L. Ed. 2d 201 (1998).

General Statutes § 53a-15, our entrapment statute, provides: "In any prosecution for an offense, it shall be a defense that the defendant engaged in the proscribed conduct because he was induced to do so by a public servant, or by a person acting in cooperation with a public servant, for the purpose of institution of criminal prosecution against the defendant, and that the defendant did not contemplate and would not otherwise have engaged in such conduct." Our Supreme Court has held that the test for entrapment is a subjective test that "focuses on the disposition of the defendant to commit the crime of which he or she is accused." *State* v. *Lee*, 229 Conn. 60, 78, 640 A.2d 553 (1994).

"It is well settled that the fact that officers or employees of the Government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution. Artifice and stratagem may be employed to catch those engaged in criminal enterprises. . . . In their zeal to enforce the law, however, Government agents may not originate a criminal design, implant in an innocent person's mind the disposition to commit a criminal act, and then induce commission of the crime so that the Government may prosecute. . . . Thus, the subjective defense of entrapment succeeds only if the government, not the accused, is the source of the criminal design. The subjective defense fails if the accused is previously disposed to commit the crime, and the government merely facilitates or assists in the criminal scheme. . . .

"As the subjective entrapment doctrine has been applied in Connecticut, the defendant has the initial responsibility to present sufficient evidence that the state induced him or her to commit the offense charged . . . . Once that burden has been met, however, the burden shifts to the state to prove beyond a reasonable doubt that the defendant was predisposed to commit the offense. . . . [T]he defense of entrapment raises a question of fact, and, where there is a claim of entrapment, the issue must be resolved by the trier . . . . " (Citations omitted; internal quotation marks omitted.) *State* v. *Nero*, 122 Conn. App. 763, 784–85, 1 A.3d 184 (2010).

It is well established that where there is no evidence that the defendant either was induced by the police to commit a crime in which he would not have engaged except for such inducement or that he admitted to committing a crime, a charge on entrapment is not required. *State* v. *Hawkins*, 173 Conn. 431, 437–38, 378 A.2d 534 (1977); *State* v. *Avery*, 152 Conn. 582, 584, 211 A.2d 165 (1965); *State* v. *Grant*, 8 Conn. App. 158, 164, 511 A.2d 369 (1986). There is, in the present case, insufficient evidence that the defendant either was induced by the police to commit a crime in which he would not have engaged except for such inducement or that he admitted to committing a crime. Therefore, the court did not err in refusing to instruct the jury on the defense of entrapment. We will address the inducement issue and admission issue, each in turn.

A

Because our Supreme Court in *State* v. *Hawkins*, supra, 173 Conn. 437–38, has required to merit an entrapment charge either admission or police inducement resulting in the commission of a crime that the defendant otherwise would not have committed, we first address the inducement aspect of our analysis.

The defendant claims that he carried his burden by presenting evidence of inducement sufficient to merit an instruction on entrapment. In response, the state argues that the trial court was not obligated to give the requested entrapment instruction because there was no evidence that the police induced the defendant to engage in a drug deal. We agree with the state.

We begin with a brief overview of the level of inducement our courts have considered sufficient to support a jury charge of entrapment. Our Supreme Court has held that a defendant was entitled to an entrapment instruction where the facts of the case demonstrated inducement. *State* v. *Marquardt*, 139 Conn. 1, 89 A.2d 219 (1952). In *Marquardt*, the court defined the degree of undercover police activity that must be shown before inducement is established. The *Marquardt* court found inducement where the officer "was the one who not only first broached to [the defendant] the subject of taking bets but persisted, after being repelled, and on subsequent dates coaxed and lured the defendant into accepting money and finding someone with whom to place it as a wager, and who on each of four different occasions paid him $1 for so doing." Id., 8. This prolonged, persistent and repeated level of activity, involving coaxing and luring, amounted to a showing of inducement sufficient to warrant an instruction on entrapment. Id. The Supreme Court also noted that "if the criminal intent or the willing disposition to commit the crime originates in the mind of the accused and the criminal offense is completed, the fact that the opportunity is furnished or the accused is aided in the commission of the crime in order to secure the evidence necessary to prosecute him for it constitutes no defense. On the other hand, if the evil intent and the criminal design originate in the mind of the government agent and the accused is lured into the commission of the offense charged in order to prosecute him for it,

when he would not have committed an offense of that general character except for the urging of the agent, no conviction may be had." Id., 5.

In contrast, it is also well settled that a simple request by a police officer that a defendant break the law is not inducement sufficient to merit a charge on entrapment. See *State* v. *Hawkins*, supra, 173 Conn. 436; see also *State* v. *Marino*, 23 Conn. App. 392, 394, 400, 580 A.2d 990 (where undercover police officer approached defendant, explained usual drug dealer unavailable and purchased cocaine, court provided entrapment instruction although "doubtful" of defendant's entitlement to such instruction), cert. denied, 216 Conn. 818, 580 A.2d 63 (1990); *State* v. *Grant*, supra, 8 Conn. App. 164 (where undercover police officer approached defendant and purchased marijuana with premarked $5 bill, court properly refused to give entrapment instruction). "A predisposition to commit the crime, which is triggered by circumstances created by, or under the control of, the police, does not set the stage for the defense of entrapment." *State* v. *Taylor*, 153 Conn. 72, 84, 214 A.2d 362 (1965), cert. denied, 384 U.S. 921, 86 S. Ct. 1372, 16 L. Ed. 2d 442 (1966).

In *Hawkins*, an undercover police officer, on three separate occasions, posed as a drug buyer, engaged the defendant in conversation regarding purchasing drugs and, following such negotiation, ultimately purchased cocaine from the defendant. *State* v. *Hawkins*, supra, 173 Conn. 433–34. The defendant requested an instruction on entrapment, but the trial court refused. Id., 435. Our Supreme Court affirmed and held that there was no evidence that raised an issue of inducement. Id., 436.

With this precedent in mind, we now turn to the defendant's claims. The defendant argues that McKinney's actions rose to the level of inducement because

there were three encounters between him and the defendant. In response, the state argues that even taking the evidence in the light most favorable to his claim, the activity amounts to only one solicitation, at best.

Simply put, "under our state decisional law, [e]vidence of unlawful inducement may be found where the police . . . appeal to the [accused's] sympathy or friendship, or where they *repeatedly* or *persistently* solicit the [accused] to commit the crimes." (Emphasis in original; internal quotation marks omitted.) *One Way Fare* v. *Dept. of Consumer Protection*, 96 Conn. App. 780, 784, 901 A.2d 1246 (2006). Even if we accept the defendant's view of the facts that there were three encounters, the encounters viewed individually and cumulatively do not rise to the level of "repeated" or "persistent" solicitation as required by our case law.

In the present case, McKinney, like the undercover officer in *Hawkins*, was engaged with the defendant in conversation, on three separate occasions, regarding the purchase of drugs. This is not a case where, as in *Marquardt*, the undercover officer coaxed, incited and aroused the defendant on four separate dates to buy the drugs and an entrapment instruction was warranted. The undercover officer in *Marquardt* even refused to accept the defendant's return of the bet money and paper slip. Conversely, in the present case, McKinney is the one who refused the defendant's offer to purchase the drugs because the defendant did not have enough money. After the refusal, the defendant left the area on his bicycle and returned of his own free will to complete the sale. There is no evidence that McKinney repeatedly or persistently incited the defendant to return and to purchase drugs. We conclude that despite McKinney's conversation with the defendant and the multiple encounters, the court properly determined that there was no evidence raising an issue of inducement.

Three encounters between the defendant and McKinney do not amount to inducement, especially when taking into account the fact that the defendant is the one who approached McKinney and inquired each time about the drugs in question. It is undisputed on appeal that the defendant first approached McKinney and initiated the conversation. McKinney actually refused to sell the drugs to the defendant twice, which prompted the defendant to leave to obtain the requisite $50 amount demanded for a bag of drugs. Even viewing the interaction as three separate encounters, it does not rise to the level of persistent coaxing, inciting or luring to warrant an entrapment instruction. See *State* v. *Marquardt*, supra, 139 Conn. 8.

Whether there was one encounter or three encounters between the defendant and McKinney does not change our conclusion. At trial, the defendant admitted to only one encounter, but on appeal cites three, by virtue of McKinney's testimony, as the basis of his entitlement to an entrapment defense. Although in his appellate brief he now concedes that he initiated the conversation, the defendant at trial testified that McKinney initiated the conversation and shouted, "Yo, yo, yo." McKinney's testimony does not indicate that he initiated the conversation. The defendant still is not entitled to an entrapment instruction because the encounter described by the defendant does not rise to the level of persistent urging required by our case law.[1] The defendant admits to only one encounter but relies on three encounters by virtue of McKinney's testimony. However, McKinney testified that he refused the defendant's first and second entreaties to sell the drugs and

[1] "The jury is free to juxtapose conflicting versions of events and to determine which is more credible. . . . [T]he [jury] can disbelieve any or all of the evidence . . . and can construe [the] evidence in a manner different from the parties' assertions." (Citation omitted; internal quotation marks omitted.) *State* v. *Person*, 236 Conn. 342, 347, 673 A.2d 463 (1996).

only did so, at the defendant's request, at the third encounter. This is an indication of a desire on the part of the defendant to buy the drugs. There is no evidence that McKinney in any way induced the defendant by persistent urging and pressure as required by case law interpreting § 53a-15, our entrapment statute. See *State* v. *Marquardt*, supra, 139 Conn. 8.

The defendant also claims that entrapment has been "incorrectly labeled as not of constitutional magnitude." He further claims that failure to provide an entrapment instruction violates his right to due process and to present a defense. As the state correctly points out in its brief, there is no constitutional infirmity in the failure to charge on entrapment. See *State* v. *Ebron*, 292 Conn. 656, 692–93, 975 A.2d 17 (2009), overruled on other grounds by *State* v. *Kitchens*, 299 Conn. 447, 10 A.3d 942 (2011). We, therefore, need not address this claim further.

## B

We next address the defendant's claim that the jury should have been instructed on the defense of entrapment even though he denied performance of the acts. In support of his claim, the defendant further argues that despite his denial, the jury should have been given an entrapment instruction because inconsistent defenses are expressly permitted in Connecticut courts. See *State* v. *Harris*, 189 Conn. 268, 273, 455 A.2d 342 (1983). We disagree.

Our Supreme Court's holding in *State* v. *Avery*, supra, 152 Conn. 582, the seminal case concerning instruction on the defense of entrapment, is dispositive. The court in *Avery* held that where the findings do not support that the defendant admitted to the commission of a crime and, rather, indicate a complete denial of any connection with the crime, or there is no evidence of inducement, a charge on entrapment is not required.

Id., 584. This precisely is the case before us. In *Avery*, as in the present case, the evidence shows a complete denial of any connection with the crime. In fact, in the present case, the defendant's main defense at trial was actual innocence and mistaken identification. There was no evidence that he admitted to any elements of the crime as required by *Avery*, and, therefore, the court properly declined to charge the jury on the defense of entrapment.

The defendant also argues that the United States Supreme Court's rationale in *Matthews* v. *United States*, 485 U.S. 58, 108 S. Ct. 883, 99 L. Ed. 2d 54 (1988), should be extended to apply to the present case. We review the defendant's claim but find that *Matthews* is inapplicable to this case.

The United States Supreme Court in *Matthews* v. *United States*, supra, 485 U.S. 62, held that "even if the defendant denies one or more elements of the crime, he is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment." The court, however, decided the case on the basis of federal criminal law and procedure as opposed to the law of entrapment in Connecticut, and, therefore, it does not influence our decision. See *State* v. *Avery*, supra 152 Conn. 582. *Matthews* makes no reference to constitutional principles that would control our decision, and therefore it is inapplicable.

We conclude that the court properly determined that there was inadequate evidence presented during trial to warrant an entrapment instruction.

II

The defendant next claims that the state failed to prove beyond a reasonable doubt that he had committed

the crime of possession of drug paraphernalia with intent to use.

The defendant maintains that the evidence was insufficient to permit the jury to find that the glass tube belonged to him and was in his possession at the time of his arrest. Specifically, he argues that to conclude, from the evidence presented, that he possessed the crack pipe would amount to mere conjecture and speculation on the part of the jury. In response, the state contends that testimony from Officer Christopher Conley, the arresting officer, provided sufficient evidence to support the jury's verdict. We agree with the state.

As a threshold matter, we set forth the two-pronged standard of review for claims of insufficiency of the evidence. "First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Butler*, 296 Conn. 62, 76, 993 A.2d 970 (2010).

Additionally, "the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . . Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of

evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Citation omitted; internal quotation marks omitted.) *State* v. *Brown*, 299 Conn. 640, 647–48, 11 A.3d 663 (2011). "Our review of factual determinations is limited to whether those findings are clearly erroneous." (Internal quotation marks omitted.) *State* v. *Moody*, 121 Conn. App. 207, 219, 994 A.2d 702, cert. denied, 297 Conn. 920, 996 A.2d 1193 (2010).

To sustain a conviction for the crime of possession of drug paraphernalia with intent to use pursuant to § 21a-267 (a) in this case, the state needed to prove beyond a reasonable doubt that the defendant "possessed" the crack pipe. General Statutes § 53a-3 (2) defines "possess" as "to have physical possession or otherwise to exercise dominion or control over tangible property . . . ." Possession may be actual or constructive. *State* v. *Bowens*, 118 Conn. App. 112, 120, 982 A.2d 1089 (2009), cert. denied, 295 Conn. 902, 988 A.2d 878 (2010). Actual possession, the type of possession at issue here, "requires the defendant to have had direct physical contact with the [contraband]." (Internal quotation marks omitted.) Id., 120–21. Typically, the state will proceed under a theory of constructive possession only when the contraband is not found on the defendant's person at the time of arrest, but the accused still exercises dominion and control. Id., 121.

The defendant challenges the sufficiency of the evidence as to the actual possession element, namely, the testimony that Conley saw the defendant holding the

crack pipe in his hand, without any independent confirmation from another witness. In support, the defendant also points out that the state did not present fingerprint evidence to corroborate Conley's observations. After reviewing the cumulative evidence presented at trial, and viewing it in the light most favorable to sustaining the verdict, we conclude that there was sufficient evidence for the jury to find beyond a reasonable doubt that the defendant unlawfully possessed drug paraphernalia with the intent to use in violation of § 21a-267 (a).

On the basis of Conley's direct testimony presented a trial, the jury reasonably could have found that the defendant had a crack pipe tube on his person at the time of the undercover drug deal. Conley testified that he found the crack pipe in the defendant's hand when he went to handcuff him. The credited testimony of even a single witness may be sufficient to sustain a defendant's conviction. *State* v. *Whitaker*, 215 Conn. 739, 757 n.18, 578 A.2d 1031 (1990). Additional corroborating fingerprint evidence was not required. The seized crack pipe, which consisted of a broken glass tube with pieces of steel wool inside it, was admitted as evidence and shown to the jury. See General Statutes § 21a-240 (20) (A) (defining "drug paraphernalia" to include "glass . . . pipes with screens"). Conley also testified that drug users manufacture a crack pipe by inserting pieces of a steel wool scouring pad into a glass tube to serve as a filter. The jury reasonably could have found from Conley's testimony that the defendant had the glass tube on his person at the time of his arrest.

The defendant also points out that the defendant was seen by McKinney during the encounter, yet no testimony was elicited from McKinney about a crack pipe in the defendant's hand. This contention has no merit. We cannot speculate as to why certain testimony was not elicited from McKinney, nor is it necessary for

us to do so. The testimony of Conley alone was enough to support the defendant's conviction. "This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Internal quotation marks omitted.) *State* v. *Brown*, supra, 299 Conn. 648. It is within the exclusive province of the fact finder to weigh the evidence and to determine the credibility of witnesses. See *State* v. *Serrano*, 123 Conn. App. 530, 542, 1 A.3d 1277 (2010), cert. denied, 300 Conn. 909, 12 A.3d 1005 (2011). We conclude that the evidence in the present case, viewed in the light most favorable to sustaining the verdict, was sufficient to support a finding that the defendant had drug paraphernalia on his person.

The judgment is affirmed.

In this opinion the other judges concurred.